No. 17,226.

## THE BOARD OF COMMISSIONERS OF RUSH COUNTY ET AL. *v.* DINWIDDIE ET AL.

WILL.—*Trust.*—*Home for Unfortunates.*—*Board of County Commissioners Competent to Act as Trustee.*—A board of county commissioners in this State is competent to act as a trustee under the will of an individual, where the object of the trust is to establish a home for worthy, unfortunate persons and orphan boys.

SAME.—*Beneficiaries.*—*Selection in Discretion of Trustee.*—A failure in the will to confine the beneficiaries of the trust to residents of the county does not invalidate the trust, and certainly not where the board of commissioners is made the judge of everything that is necessary relating to the trust, and is given full discretion in the selection of the beneficiaries from the class of persons named.

SAME.—*Bequest of National Bank Stock.*—*Right to Hold.*—*Perpetuities.* —A bequest to a board of county commissioners, as trustee, of stock in a National bank "to be kept as a perpetual fund, to remain in said bank while it exists," does not invalidate the gift, even though, under the banking laws, a corporation can not hold such stock, where the will invests the trustee with discretion as to what is necessary to be done. Nor does this provision violate the statute against perpetuities.

SAME.—*Church.*—*Provision Requiring Trustee to Build.*—A trust created by will in a board of county commissioners whereby a home is to be provided for worthy, unfortunate persons and orphan boys is not rendered invalid by a provision requiring a church to be built in connection with the home.

SAME.—*Partial Intestacy.*—*Presumption Against.*—*Meaning of Testator.* —In interpreting wills the presumption is always against partial intestacy, and the meaning of the testator must be sought from the whole instrument.

SAME.—*Disposition of Entire Estate.*—*Construction of Will.*—A testatrix after disposing of her home farm to a board of county commissioners, as trustee, and providing for the establishment of a home by them for the benefit of a class of persons, then devised to named persons in trust "all my remaining estate to be managed by them as by me directed." The directions being to handle the property without sacrifices, and, when they were through with the trust, to "turn all over to the commissioners * * for the benefit of the needy with as little cost as possible."

*Held*, that the will disposes of all of the testatrix's property.

From the Rush Circuit Court.

*B. L. Smith, C. Cambern, G. H. Puntenney, H. E. Barrett, W. J. Henley* and *L. D. Guffin,* for appellants.

*J. C. Blacklidge, C. C. Shirley, B. C. Moon, D. S. Morgan, D. Morris, G. W. Morgan* and *S. L. Innis,* for appellees.

HOWARD, J.—The appellees filed their complaint in two paragraphs, in each of which they alleged that, as sole heirs at law of Maria Dinwiddie, deceased, they were the owners in fee simple as tenants in common of certain described real estate, praying that their title be quieted and for partition.

To this complaint the appellants answered jointly in two paragraphs, and the board of commissioners also separately in two paragraphs. In each paragraph of both answers was set up a copy of the last will of the said Maria Dinwiddie, under the terms and provisions of which it was averred that the appellant, board of commissioners, was the owner of the lands described in the complaint.

The appellees demurred to each of the answers, and the demurrers were sustained by the court. The correctness of this ruling is brought here for decision. To decide the question so raised, it becomes necessary to pass upon the validity of the last will of Maria Dinwiddie, in so far at least as relates to the lands devised by her.

No question is raised as to the competency of the testatrix to make her will, or to the due execution of the same, the sole question being whether the will is sufficient to effect the purposes intended by her.

The will was written by the testatrix herself. It is wholly unpunctuated, and without division of sentences by capitals. So far as need be set out, it is as follows:

VOL. 139—9

"I give to the county commissioners of Rush County State of Indiana and their successors in office my farm containing one hundred and sixty acres situated in Jackson Township Rush County known as the Dinwiddie farm on which to establish a home for the benefit of worthy persons who have no home and orphan boys where they can be learned to work and be made self supporting the home limited in number to as many as the farm will comfortably support it is not to be called a poor house but a home where worthy unfortunate persons can be enabled in a measure to support themselves  The home to be called the Dinwiddie Home I also give to said Commissioners my bank stock in the Rushville National Bank to be kept as a perpetual fund to remain in said Bank while it exists after such Bank ceases to exist said Commissioners or their successors  shall invest the fund in some safe way where the most interest can be secured all of the interest accruing from said fund to be used for the benefit of the home in the way of building and other necessary repairs and furnishing stock and implements necessary to carrying on said farm  the Coms being the judges of what is necessary they to be held by the County responsible for the judicious management of all trust committed to them  No dissipated wicked persons are allowed the benefit of the home

"in the second place I leave in the hands of my nephew William A. Smith and Thomas M. Green in trust all my remaining estate to be managed by them as by me directed they not being required to give bond believing they will faithfully and honestly discharge the trust committed to them"

Next follow numerous special bequests concerning which there is no dispute, after which the will continues:

"all bequests herin named are to be paid out of money on deposit and promissory notes held by me my trustees

to hold my business houses not disposed of collecting the rents and keeping up necessary repairs the residue used in complying with my wishes providing there are sufficient which I think there will be I desire to have a substantial church built on the Home Farm after I am called away if such is not built while I remain the church to be a plain substantial structure not to cost over three thousand dollars the foundations to be stone the walls brick with slate roof plainly and substantially finished inside it is not to be sectarian all denominations permitted and requested to hold religious services as often as convenient if there should be any means left after all requirements are fulfilled the same can be kept in some safe investment the income used in keeping the church supplied with preaching and other religious exercises.

"My Trustees are allowed ample time to make arrangements without any sacrifices I would say ten years, if necessary if needed when they are through with the trust they can turn all over to the county commissioners and their successors if all parties think it would be best for the estate to retain the houses and lots they can do so my wish is that the uses be made of the estate for the benefit of the needy with as little cost as possible.

"July 10, 1891. MARIA DINWIDDIE.

"Witnesses $\begin{cases} \text{J. W. SMELSER.} \\ \text{JAMES T. KITCHEN.} \end{cases}$

"this is my own Will written by my own hand."

It is first contended that the devise and bequests to the commissioners are void, for the reason that the county board is not competent to take the same.

By section 2726, R. S. 1894 (section 2556, R. S. 1881): "All persons, except infants and persons of unsound mind, may devise, by last will and testament, any interest, descendible to their heirs, which they may have in

any lands, tenements, and hereditaments, or in any personal property, to any person or corporation capable of holding the same."

Whether the board of county commissioners is such a corporation, capable of receiving and holding a devise or bequest of property for uses in harmony with the purposes for which the board has been created, seems hardly to admit of doubt.

In Perry on Trusts, section 42, the author says: "At the present day corporations of every description may take and hold estates, as trustees, for purposes not foreign to the purposes of their own existence; and they may be compelled by courts of equity to carry the trusts into execution."

In section 43 of the same work, it is said: "If the trusts are within the general scope of the purposes of the institution of the corporation, or if they are collateral to its general purposes, but germane to them, as if the trusts relate to matters which will promote and aid the general purposes of the corporation, it may take and hold, and be compelled to execute them, if it accepts them. Thus towns, cities, and parishes may take and hold property in trust for the establishment of colleges, for the purpose of educating the poor, for the relief of the poor, * * * and for the support of schools, or for any educational or charitable purposes within the scope of its charter."

The general purposes of the organization of the board of commissioners must be sought in the constitution and in the statutes of the State.

By section 10, article 6, of the constitution: "The General Assembly may confer upon the boards doing county business in the several counties, powers of a local, administrative character."

By section 3, article 9, the constitution provides that:

"The county boards shall have power to provide farms as an asylum for those persons who, by reason of age, infirmity, or other misfortune, have claims upon the sympathies and aid of society."

By section 8163, R. S. 1894 (section 6087, R. S. 1881), and following sections, the Legislature has exercised these constitutional powers, and county boards are invested with the supervision of matters relating to the poor, including the purchase of land in the name of the county for an asylum.

Aid is also authorized in numerous special cases to care for helpless and unfortunate persons.

By section 4596, R. S. 1894 (section 3508, R. S. 1881), and following sections, county boards may grant aid to voluntary orphan asylums, or may purchase homes for such asylums.

By section 7878, R. S. 1894 (section 1954, Elliott's Supp.), they are expressly authorized to appropriate not to exceed twenty-five thousand dollars to aid in "establishing a home for worthy, indigent old women," whenever a like amount "has been given, devised or bequeathed in trust" for that purpose.

The trust provided for in the will of Maria Dinwiddie, was "to establish a home for the benefit of worthy persons who have no home, and orphan boys where they can be learned to work and be made self-supporting, the home limited in number to as many as the farm will comfortably support, it is not to be called a poor house, but a home where worthy, unfortunate persons can be enabled in a measure to support themselves."

It would seem, from the provisions of the statute, and the constitution, that such a trust is "within the general scope of the purposes" for which the county board was instituted. But even if collateral to the general purposes of the board, it is certainly germane to them;

for the trust relates to matters which will promote and aid those general purposes, namely, the care of those who, as the constitution so beautifully states it, "have claims upon the sympathies and aid of society."

But the question raised by counsel is hardly an open one in this State. In *Craig, Admr.,* v. *Secrist,* 54 Ind. 419, it was held that a county has the legal capacity to take a devise of the property of a testator, as a permanent fund, the income from which is to be used in educating the colored children of the county. In *Board, etc.,* v. *Rogers,* 55 Ind. 297, the devise was of real estate "to the commissioners of the county of LaGrange, aforesaid, and their successors in office, forever, * * * in trust and for the use and benefit of the orphan poor, and for other destitute persons, of said county." This devise, which was held good, was very much like that in the will before us. Both the foregoing cases were approved in the case of *Skinner* v. *Harrison Tp.,* 116 Ind. 139. The devise in the latter case was also of real estate, and was made to a township for the use of the common schools of the township. MITCHELL, J., said in that case: "A municipal corporation may be a trustee under the will of an individual when the trust created is germane to the purposes for which the corporation was called into being, and when the administration of the trust, and the liabilities it imposes, are not foreign to the objects for which the corporation was instituted." Citing many authorities, including 2 Dill. Munic. Corp., section 567.

But it is said that the will of Maria Dinwiddie names as beneficiaries persons not confined to Rush county, whereas the jurisdiction of the commissioners who are named as trustees does not extend beyond the limits of the county. Since the testatrix made choice of the commissioners of the county as her trustees, it may be rea-

sonably inferred that she thus intended to limit the beneficiaries to "worthy persons who have no home, and orphan boys," resident, or at least present, within the limits of the county.

Besides, it is the law "that a gift of charity is maintainable in this State, if made to a competent trustee, and if so defined that it can be executed as made by the donor by a judicial decree, although the beneficiaries are not designated by name or specifically pointed out, if the trustee is invested with full and ample discretion to select the beneficiaries of such charity from the class of persons named." *Grimes' Exrs.* v. *Harmon,* 35 Ind. 198. The trustees in this case before us are competent, as we have seen, and to them is all discretion given, as to the selection of the beneficiaries from the class named, as well as in everything else relating to the home. The commissioners, as her trustees, are expressly declared by her to be "the judges of what is necessary, they to be held by the county responsible for the judicious management of all trust committed to them." The commissioners being thus made the judges of whatever is to be done in relation to the trust, must therefore select out of the class of "worthy persons who have no home, and orphan boys," such persons as they may deem most fitted for the home, and most needful of its advantages.

They must not be "dissipated or wicked persons"; and they must be "limited in number to as many as the farm will comfortably support." Otherwise, the commissioners, "responsible for the judicious management of all trust committed to them," are charged with the duty of making a proper selection. They may, therefore, confine their choice to inhabitants of Rush county; as was, perhaps, the intention of the testatrix in selecting the county commissioners as her trustees. Yet, it is not the part of the court to set bounds to the generous be-

nevolence of the testatrix; and we perceive nothing in the broad charity of the will, nothing in the duties of the commissioners as fixed by statute, that would forbid their receiving as inmates of the home any suitable members of the designated class who should present themselves before the board. The fund to be disbursed is not raised by taxation, but is the free bounty of the founder of the charity.

The important matter is, that the commissioners themselves are made "the judges of what is necessary," in this, as in all other matters relating to the trust.

*Woodruff* v. *Marsh,* 63 Conn. 125, is a late case in point, and, as counsel well say, "is entitled to consideration for the reason that Connecticut has followed, to a great extent, the same doctrine that Indiana has," in relation to charitable uses and trusts. The bequest, in that case, reads: "And also the sum of four hundred thousand dollars, for the purpose of maintaining and supporting a home for destitute and friendless children, permanently, on the above described premises, and to be known as the 'William L. Gilbert Home'; the same to be under the care and control of the above-named persons as trustees."

It was contended by the heirs at law in that case, as it is in this, that the devise and bequest was "void for indefiniteness, uncertainty, and the absence of any grant of power to select the beneficiaries."

The words "care and control," used in that will, are the only words which could give the trustees the right to select the beneficiaries. The court held that the "care and control" given to the trustees was not limited to the fund but extended to the institution, and that this control of the institution involved the power to select the individuals who should receive the benefit of it.

In that case the trust was for "destitute and friendless

children"; in this it is for "worthy persons who have
no home and orphan boys." A permanent home, the
"William L. Gilbert Home," in the one case, and the
"Dinwiddie Home" in the other, is the means provided
to accomplish the charitable purpose. The trustees are
given "care and control" of the home in the one case;
in the other they are made "the judges of what is neces-
sary," and "responsible for the judicious management
of all trust committed to them."

In both cases, the test of a valid charitable trust, as
applied by BUSKIRK, J., in the case of *Grimes' Executors*
v. *Harmon, supra,* is fully satisfied: "If * * * certain
and ascertainable trustees are appointed," Judge Bus-
KIRK says, "with full powers to select the beneficiaries
and devise a scheme or plan of application of the funds
appropriated to the charitable object, the court will,
through the trustees, execute the charity."

Another objection raised is, that the will gives the
board of commissioners, in trust, the "stock in the
Rushville National Bank, to be kept as a perpetual fund
—to remain in said bank while it exists."

It is said that this bequest must fail, and with it the
whole trust, because only natural persons can hold Na-
tional bank stock. Should the commissioners be unable
to retain the stock under the banking laws, that will not
invalidate the gift; they may invest the value of the
stock in some other way; as, in fact, the will itself pro-
vides they shall do after the bank ceases to exist. The
trustees are here also "the judges of what is necessary";
they have taken her place and must do what may be
necessary to carry out the trust in circumstances which
she could not foresee.

It is also considered as invalidating the trust that the
testatrix provided for a church at the home. Every
educational, benevolent and penal institution has its

chapel exercises. The houses of the General Assembly, and of Congress, are opened with prayer. It is clear, from the words of the will, that the testatrix intended only to provide chapel exercises for the moral instruction of the inmates of the home. She evidently thought that moral training, no less than intellectual and physical, was necessary for the comfort of the older and the education of the younger inmates of the home. We can see nothing in this objection.

It is next contended that the bequest of bank stock is invalid as in conflict with the statutes against perpetuities (sections 3382, 8133, R. S. 1894; sections 2962, 6057, R. S. 1881).

We do not think these statutes are violated. She calls the bank stock a perpetual fund, to remain in the bank while it exists. This is far from meaning forever. Indeed she provides in the very next words that when the bank ceases to exist the commissioners shall seek some other safe investment for the funds. A reasonable interpretation of these words means only that the trustees shall take the utmost care in securing the safety of the funds; and she knew no safer place for her money while the bank lasted than to keep it there.

It is next contended that the last clause of the will shows that a certain part of the property is left undisposed of by the will. We think it very clear that counsel misapprehend the plain meaning of these words. It is a fixed principle of the interpretation of wills that the presumption must be always against partial intestacy, and also that the testator's meaning must be sought from the whole context, and not alone from separate parts of the will. So considering this will, we shall find that there is no lapse in any devise.

After disposing of her farm, directly, to the commissioners, and providing for the establishment of the home

by them, she says: "In the next place I leave in the hands of my nephew William A. Smith and Thomas M. Green, in trust, all my remaining estate, to be managed by them as by me directed." And, at the close, she makes further directions as to this property: "My trustees are allowed ample time to make arrangements without any sacrifices, I would say ten years if necessary, if needed. When they are through with the trust they can turn all over to the commissioners and their successors. If all parties think it would be best for the estate to retain the houses and lots, they can do so. My wish is that the uses be made of the estate for the benefit of the needy, with as little cost as possible."

There is here some repetition and awkwardness of language, but the meaning shines clear through it all. Besides the property put into the hands of the commissioners directly, there was a large amount, including some houses and lots, and notes out, that required such attention as the commissioners could not well give. This last property was put into the hands of two trustees, to collect and gather in all her estate, after which they should "turn all over to the commissioners." If it was thought best, in the interests of her estate, that the houses and lots should be retained, why the commissioners might do so. She made the suggestion, they were the sole judges of what might be necessary. But these lots, whether to be sold or retained, and all the other property left in trust, for settlement, with Smith and Green, when they were through with their trust, should go to the permanent trustees, the county commissioners, to whom all her property, real and personal, except the special legacies, was devised and bequeathed for the establishment of the home. This is the reasonable and consistent interpretation of the will, when taken altogether, as it must be.

140 SUPREME COURT OF INDIANA,

Counsel for appellees base much of their argument for the setting aside of this trust upon the case of *Grimes' Executors* v. *Harmon, supra.* That case is a mine of legal learning and profound reasoning upon the subject of charitable trusts and uses. We do not think, however, that there is anything in that case to show that the trust in this case should fail. The trust in that case failed for want of a trustee. The bequest there was "to the orthodox Protestant clergymen of Delphi and their successors, to be expended in the education of colored children."

The court found that when the will was executed no organized or corporate body known as "the orthodox Protestant clergymen of Delphi" was in existence. There was, therefore, no person or corporation with whom the trust might rest.

In *Erskine* v. *Whitehead, Exr.*, 84 Ind. 357, it was well said of the case of *Grimes' Exrs.* v. *Harmon, supra,* by Woods, J., that "If there had been a good appointment of trustees it is by no means clear that the will of Samuel Grimes should not have been deemed valid as conferring upon trustees the power to select the particular individuals who should receive the benefit of the fund."

In Perry Trusts, section 713, a similar criticism is made on the same case. See also *Cruse* v. *Axtell*, 50 Ind. 49, and *Haines* v. *Allen*, 78 Ind. 100; *McCord, Exr.*, v. *Ochiltree*, 8 Blackf. 15; *Vidal* v. *Girard's Exrs.*, 43 U. S. (2 How.) 126; Perry Trusts, sections 720, 721.

In the case at bar there is a noble charity provided, there are trustees ready and willing to receive the funds and to execute the powers conferred by the will, and to select the objects of the trust and thus make them certain and apply the funds in aid of the objects so selected. It is quite unnecessary to invoke any extraordinary powers, such as would have been necessary to make the trust valid in the case of *Grimes' Exrs.* v. *Harmon, supra.*

All that is needed is the application of a liberal rule of construction, which will always be exercised by a court of equity in favor of a charitable trust. *Erskine* v. *Whitehead, Exr., supra.*

The judgment is reversed, with instructions to overrule the demurrers to the answers and for further proceedings.

Filed June 7, 1894; petition for a rehearing overruled Oct.17, 1894.