WILLIAM C. STAINES, APPELLANT, v. ROBERT T. BURTON AND JAMES T. LITTLE, EXECUTORS, The Church of Jesus Christ of Latter Day Saints, and W. B. PRESTON, RESPONDENTS.

1. *Will—Trustee and Beneficiaries When Sufficiently Designated.*

    S., after designating the beneficiaries of his will, and setting apart to them each a life estate, provided therein as follows : " After the death of each one, I desire that my executors shall make over to the presiding bishop of the Church of Jesus Christ of Latter-Day Saints the half of my estate from which that wife's income was derived. The presiding bishop shall receive it in trust, to expend the annual interest or income, according to his discretion, for the benefit of the members of the Church of Jesus Christ of Latter-Day Saints, whether it be for public schools, parks, watering cities, acclimatizing foreign plants, or anything else whereby the members may be benefited." *Held,* that the trustee is clearly designated, and the beneficiaries under the will are sufficiently described.

2. *Rule of Inference—Rule as to Perpetuities.*

    The inference from the clause, "anything else whereby the members may be benefited," is that the uses to which the estate might be put were similar to those expressed, and, as such uses were charitable, the rule as to perpetuities does not apply.

(No. 915. Decided July 14, 1898.)

Appeal from district court, Salt Lake county; Ogden Hiles, *Judge.*

Suit by William C. Staines against Robert Burton and another, executors of the will of William Carter Staines, deceased. From a decree for defendants, plaintiff appeals. *Affirmed.*

*Shepard & Tanford,* for appellant:

The language does not unequivocally provide for a conversion into personal property; and for an equitable conversion, the language must clearly order that the proceeds so realized are to be invested in personal securities, and here the language is that "Executors shall sell it and invest the proceeds as they think best, to be safe, and to yield the most income." 2 Story on Eq. Juris., 13th Ed., sec. 1214; 3 Pomeroy on Eq. Juris., secs 1159 and 1160; 1 Beach. Eq. Juris., sec. 522 *et seq.*; *Machemer's Estate,* 21 At. Rep. 441; *Hobson* v. *Hale,* 95 N. Y. 588; *In re McComb,* 22 N. E. Rep. 1070; *Ford* v. *Ford,* 33 N. W. Rep. 188, 196 (b); *Howard et al.* v. *Peavey,* 21 N. E. Rep. 503; 3 Peere Williams, 19 note.

The object of this trust is uncertain as to what it shall be applied to, consequently it is void and of no effect, for to constitute a valid trust there must be a trustee, a legal trust and a beneficiary. If there be no beneficiary or no fixed legal object or purpose, the trust must fail. *Morice* v. *Bishop of Durham,* 10 Vesey Ch. 522; *Andrews* v. *N. Y. Bible, etc.,* 4 Sanford (N. Y.) 156; *LaPlage* v. *McNamara,* 5 Iowa 142.

Many authorities hold that, where the object is clearly charitable and the trustee is allowed discretion only as to the kind of charity, it must fail because of lack of definiteness in the *cestui.* There must be some one to enforce it, or some clearly definite and charitable purpose. *Bristol* v. *Bristol,* 53 Conn. 242; *Maught* v. *Gentzendannon,* 65 Md. 527; *Johnson* v. *Johnson,* 23 S. W. Rep. 114, and cases; *In re Fuller Will,* 44 N. W. Rep. 304 (Wis.)

This is not a devise to charitable uses as the following cases were held not to be. *Kendall* v. *Granger,* 5 Beav. 300; *Fowler* v. *Garlike,* 1 Russ. & M. 233.

To a trustee "and desire him to use and appropriate the same for such religious and charitable purposes and objects, and in such sums and in such manner as will in his judgment best promote the cause of Christ." *Maught* v. *Getzendanner*, 65 Md. 527.

Income to "two religious societies to be applied to keeping of certain burial lots in good order, the remainder to the maintenance or religious services." *Coit* v. *Comstock*, 51 Conn. 352; *Booles* v. *Smith*, 39 Conn. 217.

To trustees to apply "to such charitable and benevolent institutions as may appear to be most useful in disseminating the gospel at home and abroad." *Atty. Gen.* v. *Wallace*, 7 B. Mon. (Ky.) 611; *Loscombe* v. *Wintringham*, 12 Beav. 46 note.

"That they shall apply the residue of my estate to works of charity, such as masses for the repose of my soul and whatever else they may judge most charitable." *Boyle* v. *Boyle*, 4 Ir. Eq. Rep. 436.

To A and B, "relying on them to dispose of the same for the benefit of such charitable and benevolent and educational purposes as they shall judge most to promote the condition of the poor." See *Willets* v. *Willets*, 20 Abb. U. C. 471, *Heath* v. *Chapman*, 2 Drew 417; *In re Woodgate*, 30 S. J. 517; *Budget* v. *Hulford*, N. W. 175; 8 L. T. Ch. Div. 584; *Atty. Gen.* v. *Sibthrop*, 2 Russ. & M. 107; *Mitford* v. *Reynolds*, 1 Phil, Ch. 185.

If the trustee has, by the terms of the will, the power to donate the income of the property to uses other than charitable, the trust must fail: first, because of indefiniteness; second, because of the rule against perpetuities. *Taylor* v. *Keep*, 2 Ill. App. Court Rep. 368; Perry on Trusts, sec. 711; *Chamberlain* v. *Stearns*, 111 Mass. 267; *Norris* v. *Thompson, Executor*, 19 N. J. Eq., 307, and 20 N. J. Eq. 489; Hill on Trustees, star page 81; Tiffany &

Bullard on Trusts, 237, case under 4; *Nichols* v. *Allen*, 130 Mass. 218 and cases; 1 Jarmon on Wills, 6th Ed. 171 *et seq.; Jones* v. *Green*, 36 S. W. Rep. 729; *Morice* v. *Bishop of Durham*, 10 Vesey Ch. 522; *Ommaney* v. *Butcher*, 1 T. & R. 260; *Fowler* v. *Garlike*, 1 Russ. & Ne. 232; *Harris* v. *Du Parquier*, 26 L. T. Rep. 689; *Leaves* v. *Clayton*, 8 Ch. D. 589; *Adye* v. *Smith*, 44 Conn. 60; *James* v. *Allen*, 3 Meriv. 17; *Livesey* v. *Jones*, 35 At. Rep. 1964 (N. J.); 5 Rawle (Pa.) 151.

Again we contend that none of the uses provided for are charitable, because the benefits are limited to members of the Mormon Church, and it nowhere appears that poverty is one of the requirements for membership in the church, and it amounts to a trust continuing through all time for the benefit of certain individuals. The fact that these individuals must belong to a certain church does not make it charitable. Tyssen's Charitable Bequests, pages 65, 67, 68, 69, 71, and 73; *Swift* v. *Beneficial Society*, 73 Pa. St. 362; 1 Jarmon on Wills, 6th Ed., star page 170; *Kelly* v. *Nichols*, 19 L. R. A. 413; *Atty. Gen.* v. *Hughes*, 2 Vern. 105; 4 L. R. A. 699, note; *Kent* v. *Durham*, 142 Mass. 216; 7 N. E. Rep. 730; *Coe* v. *Washington Mills, et al.*, 21 N. E. Rep. 966; *Del. Bounty Inst.* v. *Del. Co.*, 8 Weekly note cases, 449 (Pa.) cited in 73 Me. 437.

*Le Grand Young* and *F. S. Richards*, for respondents.

ZANE, C. J.:

It appears from this record that William Carter Staines, late of Salt Lake City, made his will on March 1, 1873, devising certain real estate to his two wives, Lilias and Priscilla, and in which he disposed of his remaining estate as follows: "My will is that my executors

shall sell it, and invest the proceeds as they think best, to be safe, and to yield the most income. This income I wish to have divided as it accrues, quarterly or semi-annually, between the above-named Lilias and Priscilla, one-half to each as long as she lives. After the death of each one, I desire that my executors shall make over to the presiding bishop of the Church of Jesus Christ of Latter-Day Saints the half of my estate from which that wife's income was derived. The presiding bishop shall receive it in trust, to expend the annual interest or income, according to his discretion, for the benefit of the members of the Church of Jesus Christ of Latter-Day Saints, whether it be for schools, parks, watering cities, planting forests, acclimatizing foreign plants, or anything else whereby the members may be benefited." He made a codicil to the will on January 20, 1881, devising certain other lands to the appellant, his only child, to be held and used in case he should die without issue, and prior to testator's wives, Lilias and Priscilla, "the same to descend to and be used and disbursed as stated in the last clause of my said last will and testament;" and he departed this life on the 2d day of August, 1881. The property subject to the last clause of his will is now estimated to be of the value of $42,526.

Appellant's counsel insist that it is uncertain from testator's language who should hold the residue of the estate as distinguished from the income from it—whether the body known as the Church of Jesus Christ of Latter-Day Saints or its presiding bishop. The language clearly says the presiding bishop is to receive it in trust, and this is equivalent to saying he shall hold it in trust.

Counsel also insist that it is uncertain for whose benefit the property must be held after the death of his wives—whether for the Church of Jesus Christ of Latter-Day

Saints or its members. As to the beneficiaries, there appears to be no room for a reasonable doubt. The language of the clause is: "The presiding bishop shall receive it in trust, to expend the annual interest or income according to his discretion, for the benefit of the members of the Church of Jesus Christ of Latter-Day Saints, whether it be for schools, parks, watering cities, planting forests, acclimatizing foreign plants, or anything else whereby the members may be benefited." The expenditures are not required to be made for church purposes. The benefits contemplated are temporal, not spiritual; they do not relate to good faith or worship. Besides, the expenditures are required to be made for the benefit of the members of the church. The class of persons to be benefited is distinguished and identified by church membership.

It is further urged that the clause creates a perpetuity, and that it is therefore void. The estate subjects to the clause is certainly taken out of commerce for a longer period than a life in being and 21 years beyond. It is unalienable for all time, and must be held void if subject to the rule of law forbidding perpetuities. However, that rule does not apply to grants, devises, or bequests to charitable uses.

It is claimed the testator devoted the property in question to charity. This brings us to the question, are the uses expressed in the will charitable? The income provided was to be expended for the benefit of the members of the church. They were to be benefited by devoting it to schools, parks, watering cities, planting forests, and to acclimatizing foreign plants, or in aid of other enterprises to benefit the same class of persons. By the general expression, "anything else whereby the members may be benefited," we are authorized to assume the testator

meant enterprises similar to those mentioned in the same connection, and, if those were charitable, we may infer he intended charitable objects by his general expression. At the time the testator made his will a very large majority of the people of the territory were Latter-Day Saints. In fact there were comparatively few that were not so recognized. In dedicating a portion of his estate to their benefit, he devoted to the good of a class that included almost the entire public. He selected the enterprises and objects which he intended to encourage and aid from the standpoint of an early settler in an arid region. He was a resident of a city with but few schools, and without parks, and for whose people there was an increasing demand for water. He was in a new country without forests, and to which comparatively few foreign plants had been introduced. He had provided for his wives and his only child, and wanted to devote the remainder of his estate to the benefit of the people of his own faith. The enterprises he wished to foster and aid by his bounty were the ones upon which the advancement, prosperity, and the welfare of the people largely depended. He gave without ostentation, and from motives free from the taint of selfish or private considerations. The objects upon which the testator directed the income from the estate in question to be expended were undoubtedly charitable in a legal sense. *Jackson* v. *Phillips,* 14 Allen, 539; 1 Beach, Trusts, § 371; *Russell* v. *Allen,* 107 U. S. 163; And, Law Dict. term "Charity."

In *Jackson* v. *Phillips, supra,* the court said: "It is well settled that any purpose is charitable in the legal sense of the word which is within the principle and reason of the statute [43 Eliz. c. 4], although not expressly named in it," and the illustrations given are: "Gifts for the pro-

17 UTAH—22

motion of science, learning, and useful knowledge, though by different and in different ways from those enumerated under the second class; and gifts for bringing water into a town, for building a town house, or otherwise improving a town or city, though not alluded to in the third class, have been held to be charitable." And later in the same opinion the court uses the following language: "A precise and complete definition of a legal charity is hardly to be found in the books. The one most commonly used in modern cases, originating in the judgment of Sir William Grant, confirmed by that of Lord Eldon in *Morice* v. *Bishop of Durham*, 9 Ves. 405, and 10 Ves. 541, that those purposes are considered charitable which are enumerated in St. 43, Eliz., or which by analogies are deemed within its spirit and intendment, leaves something to be desired in point of certainty, and suggests no principle. Mr. Binney, in his great argument in the Girard Will Case, 41 defined a charitable or pious gift to be 'whatever is given for the love of God, or for the love of your neighbor, in the catholic and universal sense,—given from these motives and to these ends,—free from the stain or taint of every consideration that is personal, private, or selfish.' And this definition has been approved by the supreme court of Pennsylvania. *Price* v. *Maxwell*, 28 Pa. St. R. 35. A more concise and practical rule is that of Lord Camden, adopted by Chancellor Kent, by Lord Lyndhurst, and by the supreme court of the United States: 'A gift to a general public use, which extends to the poor as well as the rich.'" Except in a few states, St. 43 Eliz. c. 4, is admitted to be the principle test of what are in law charitable uses; and many purposes not named in it have been held to be charitable when within the reason and spirit of the statute. The testator named in the clause quoted

schools, parks, a water supply to cities, planting forests, acclimatizing foreign plants, and any other similar enterprise, as objects to which his trustee was authorized to devote the income from the estate mentioned. The terms of the trust did not require the trustee to aid all of them. He might devote all of the income to schools or parks, or to either or any of them, if, in his judgment, by so doing the members of the church would be benefited most. He did not name any unlawful object, or any purpose forbidden by the law against perpetuities; and, if the trustee were to attempt to expend the fund for any unlawful purpose, the court, in the exercise of its chancery jurisdiction, would be authorized to limit such expenditures to charitable and lawful purposes. *U. S.* v. *Late Corporation of Church of Jesus Christ of Latter-Day Saints,* 8 Utah, 342; *Jackson* v. *Phillips, supra; Mormon Church* v. *U. S.,* 136 U. S. 1; 1 Beach, Trusts, § 324. In *U. S.* v. *Late Corporation of Church of Jesus Christ of Latter-Day Saints, supra,* the court said: "When the dedication is broad enough to allow the trustee to apply the fund to unlawful as well as lawful purposes, the court will limit the application to the lawful ones. When the terms of the gift authorize the trustee to devote the fund to either of two objects—one lawful and the other illegal—its application will be confined to the legal purpose, and the unlawful one will be rejected." In the case of *Jackson* v. *Phillips, supra,* the court said: "When a charitable intent appears on the face of the will, but the terms used are broad enough to allow of the fund being applied either in a lawful or an unlawful manner, the gift will be supported, and its application restrained within the bounds of the law. The most frequent illustrations of this in the English courts have arisen under St. 9 Geo. II. c. 36 (commonly called the 'Statute of Mortmain'), prohibiting

devises of land, or bequests of money to be laid out in land, to charitable uses. In the leading case Lord Hardwicke held that a direction to executors to 'settle and secure, by purchase of land of inheritance or otherwise, as they shall be advised, out of my personal estate,' two annuities, to be paid yearly forever for charitable objects, was valid, because it left the option to the executor to make the investment in personal property, which was not prohibited by the statute; and said, 'This bequest is not void, and there is no authority to construe it to be void, if by law it can possibly be made good,' or (according to another, and perhaps more accurate, report) 'no authority to construe it to be void by law if it can possibly be made good.'" A definition of a legal charity applicable to all cases can hardly be found. And when a charitable intent appears on the face of the will, and the terms used are broad enough to allow the fund to be used for charitable objects, and for those within the rule of law forbidding perpetuities,—for lawful and unlawful purposes,—the decisions are conflicting as to whether the gift will be good as to the lawful purpose, and its application restrained to that. Some of the cases apparently in conflict may be reconciled, while others cannot. We are of the opinion that the views we have expressed are supported by the weight of authority and by reason. The decree of the court below is affirmed.

BARTCH and MINER, JJ., concur.