## ACKERMAN v. FICHTER, EXECUTOR, ET AL.

[No. 22,147.   Filed April 15, 1913.]

1. WILLS.—*Right of Disposition.*—The right to dispose of one's property by will, even to the exclusion of children, cannot be denied.   p. 397.

2. CHARITIES.— *Testamentary Trust.— Capacity of Trustees to Take.*—Where the trustees in a devise in trust for the parochial school of a certain named church, are individuals capable of

holding as trustees, definitely fixed by name, and are also described, one as the rector, and the others as the parish councillors of said church, and provision is made for succession, the trust will not fail on the ground that neither the church nor school is incorporated and the trustees are not representatives of an incorporated body.   p. 398.

3.   TRUSTS.—*Validity.—Ousting Jurisdiction of Court.*—A testamentary trust is not invalidated by the fact that by its terms the courts are to a certain extent ousted of jurisdiction over same, where the public at large has no interest in the object to which the income is to be devoted and it is not contrary to public policy.   p. 398.

4.   TRUSTS.—*Validity.—Sale of Real Estate.*—A testamentary trust is not void on the ground that it provides for the sale of real estate without petition, order of court, appraisement, bond, or other statutory requirement, since such procedure is recognized by §2877 Burns 1908, §2360 R. S. 1881.   p. 398.

5.   WILLS.—*Validity.—Requirement as to Report of Trustees.*— Where a testamentary trust falls within §§3173, 3174 Burns 1908, Acts 1895 p. 247, as a devise for benevolent purposes, requiring the trustees to make an annual report to the court, any provision in the will that no report be made must yield to the statute, but will not invalidate the will.   p. 399.

6.   CHARITIES.—*Testamentary Trust.—Validity.—Uncertainty as to Beneficiaries.*—A testamentary trust, providing that the income of the trust fund is to be devoted to the payment of tuition in the parochial school of a certain unincorporated church, is not invalidated by the fact that the beneficiaries are uncertain in number and identity, where the trustees named are capable of taking and holding, and designating the expenditures.   p. 399.

7.   CHARITIES.—*Testamentary Trust.—"Mass".—"Pious Use".—"Religious Use".—"Public Charity".—"Private Charity".*—A mass is an act of public worship in celebration of the Eucharist as observed in the Roman Catholic Church, and, being public to all as a religious ceremony, is a religious or pious use, and a public charity, so that a testamentary trust providing that certain of the income shall be applied for masses for the repose of all poor souls, being indefinite is a devise within the doctrine of pious or charitable uses, or a public charity, and is valid and enforceable where trustees are named, capable of taking and holding the legal estate.   p. 401.

From Decatur Circuit Court; *John C. Robinson,* Special Judge.

Action by Francis W. Ackerman, by his next friend, Frank Hamilton, against Lawrence Fichter, executor of the

last will of Elizabeth Ackerman, deceased, and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*J. K. Ewing, Frank Hamilton, Wm. H. Ogborn* and *Oscar R. Ewing,* for appellant.

*Tremain & Turner, Osborn & Harding* and *Bennett & Davidson,* for appellees.

MYERS, C. J.—Appellant, the adopted son of Elizabeth Ackerman, deceased, instituted this action by next friend against the rector, Lawrence Fichter, executor, and the Parish Councilors of Saint Mary's Catholic Church of the City of Greensburgh, Indiana, trustees under the will of Elizabeth Ackerman, by a complaint in two paragraphs. The first paragraph alleged the undue execution of the will and asked that it be declared null and void. It was held sufficient on demurrer, as to which ruling no question is presented here. The second paragraph, which was an amended one, sets out appellant's relation to the decedent, the admission of the will to probate, the will itself, the objections thereto, and asks that it be construed and be declared null and void and of no effect. Joint and several demurrers were sustained to this paragraph, and the rulings thereon are assigned as error on appeal.

The will provides in Item 1, for the payment of all just debts, and that only so much of the testatrix's real estate after exhausting the personal estate, as is necessary shall be sold by the executor without order of court, to pay debts. "Item 2. I give, devise and bequeath to the trustees hereinafter designated, all other property of every kind and description owned by me at my death, after paying my debts as directed in Item 1, in trust, for the benefit, maintenance, and support of the Parochial School of Saint Mary's Roman Catholic Church at said city of Greensburgh, and I direct that two-thirds of the rents, profits and income of said bequest shall be applied to the payment of tuition in said school; that one-third be used for masses every year, for the

repose of all poor souls, and the principal of said bequest
shall always be kept separate and apart for the purposes
herein expressed. Item 3. I hereby appoint and designate
Reverend Lawrence Fichter, Rector, and (four persons,
naming them,) Parish Councilors of said Saint Mary's
Catholic Church of said city of Greensburgh, and their suc-
cessors in office in said church as such Rector and Parish
Councilors, respectively, trustees, to receive, hold and man-
age in trust the property devised and bequeathed in Item 2,
above, for the benefit, support and maintenance of said
school. Said trustees shall receive, hold and control said
property in trust for the purpose specified above, and may
sell said property, and if any part thereof shall be real
estate, they shall have full power to sell the same without
notice, at public or private sale, as they deem best, and may
sell and convey the same without any appraisement, or bond
or authority or order of any court or report or approval of
said sale, and said trustees shall invest all money, or pro-
ceeds of property devised herein, in bonds of the U. S., of
any State therein, of any county, city or town in the State
of Indiana, or in first mortgage on real estate in the State
of Indiana, and said trustees shall manage said funds for
the best interest thereof, that it may yield the best income
consistent with a safe investment thereof. When any one
of the persons named above as trustee shall die, or cease to
hold the official position in said Saint Mary's Church now
held by such person as aforesaid, then such person shall
cease to be a trustee herein, or act as trustee herein, and he
shall be succeeded as trustee hereinunder, by the person
who shall be chosen or elected by the proper church author-
ity to fill the official place in Saint Mary's Church vacated
as aforesaid, and the person so chosen, or elected, shall have
the same powers and duties as trustee herein, as each of the
persons named above as trustee. It being my intention and
desire, that the same persons shall be and act as trustees
hereunder, as shall manage the business affairs of said Saint

Mary's Church. If at any time there shall be a failure of trustees under this will, and it shall be the duty of any court to appoint such trustees, then I request and direct that the court having jurisdiction of this trust, shall appoint as such trustees, the Rector and Parish Councilors of said Saint Mary's Catholic Church of Greensburgh. The trustees hereunder shall not be required to give any bond for the performance of their duties as such trustees nor shall they be requested to report to any court, but they shall transact no business, except by three-fourth vote of all trustees aforesaid, and shall annually make report of said trust, and any funds or property thereof in their hands as such trustees, to the congregation of said Saint Mary's Church (Roman Catholic), provided, that at any time upon the petition of ten persons, who are members of said Saint Mary's Roman Catholic Church and heads of families therein, said trustees may be required to report to the court having jurisdiction thereof, fully and specifically under oath, the condition of said trust, and if said report be found correct and approved by the court, such petitioners shall be liable for all costs. Trustees appointed or acting hereunder shall not receive any compensation for their services as such trustees. Item 4. If any time the Roman Catholic Church shall cease to maintain a parish school at said church, at said city of Greensburgh, then in that case said funds shall be held in trust for, and managed as hereinbefore directed by the trustees above designated, but said bequest shall be held in trust for, and the interest or income thereof shall be applied by said trustees to the general support and maintenance of said Saint Mary's Roman Catholic Church. Item 5. When Saint Mary's Roman Catholic Church of Greensburgh, shall cease to exist as a congregation or organization of the Roman Catholic Church of Greensburgh, Indiana, I direct that the property given, devised and bequeathed as aforesaid, and all the income, rents and profits thereof then held by said trustees under this will, shall be paid,

transferred and delivered to the Bishop of the Diocese Indianapolis, of the Roman Catholic Church, of if the city of Greensburgh be not a part of that Diocese, to the Bishop of the Diocese of the Roman Catholic Church of which the city of Greensburgh shall be a part, for the support of the Roman Catholic Church.''

The questions raised by the complaint are, ''That said will is illegal, against public policy, and in violation of the statutes of the State of Indiana, both civil and criminal, in this to wit: That the terms of said will violate the revised statutes of the State of Indiana, §§4031-4040 Burns 1908, §§2988-2997 R. S. 1881, inclusive; that the same is in direct violation of §3173 Burns 1908, Acts 1895 p. 247, affixing a penalty for such violation. That said will if enforced would, and will abrogate and abolish the jurisdiction of the circuit court over decedent's estates; that said will is against public policy, for the reason that the Catholic Church and the school therein named have no corporate existence, neither can they contract nor be contracted with, sue or be sued, and neither could be held accountable to any court for violation of any laws of the State of Indiana; and there is no beneficiary living, who is named in said will, having a legal capacity to enforce the execution of the trust. That said parochial school named in said will is not a free school, and does not share in public school funds but said school is supported by tuition fees paid by its patrons, and is maintained in opposition to the policy of the public school system of the State of Indiana, and the pupils of such parochial schools are not permitted to attend the public schools of Indiana.''

1. An attempt is made to interject the question of due process of law, but it has no place here, as the rights of testatrix to dispose of her property to the exclusion even of her son, can not be denied. The real question is, whether the will is void as being in violation of law, and against public policy, and as being indefinite and uncer-

tain, both as to beneficiaries, and as to trustees, and whether there is a beneficiary capable of enforcing the trust.

It is contended that since the trustees are not representatives of an incorporated body, they are unable to take. It is not necessary that they be so; if they are in being, and ascertainable, the trust will not fail because of lack of corporate existence. In this case they are individuals, definitely fixed by name, and also as the rector and parish councilors, and they are capable of holding as trustees, and are vested with title, and succession provided for, and can be held to account for their acts as trustees by the constituted authorities, with respect to property matters. *Ramsey* v. *Hicks* (1910), 174 Ind. 428, 91 N. E. 344, 92 N. E. 164, 30 L. R. A. (N. S.) 665; *Hatfield* v. *Delong* (1901), 156 Ind. 207, 209, 59 N. E. 483, 51 L. R. A. 751, 83 Am. St. 194; *Smith* v. *Pedigo* (1896), 145 Ind. 361, 33 N. E. 777, 44 N. E. 363, 19 L. R. A. 433, 32 L. R. A. 838; *Gaff* v. *Greer* (1882), 88 Ind. 122, 45 Am. Rep. 449. They have the title of the *res,* the *corpus,* and its control, therefore have powers coupled with an interest. *Cooley* v. *Kelley* (1913), 52 Ind. App. 687, 96 N. E. 638, 98 N. E. 653; *Hadley* v. *Hadley* (1897), 147 Ind. 423, 46 N. E. 823; *Rowe* v. *Beckett* (1868), 30 Ind. 154, 95 Am. Dec. 676. It is also contended that the probate courts of this State are ousted of jurisdiction over the trust, and the decedent's estate. This is true to a certain extent, but it is not uncommon, and so long as the public at large has no interest in the tuition question, and it is not in violation of public policy, disposition and control may be directed by the donor of the trust. It is also contended that the devise is void because it provides that sale of real estate without petition, order, appraisement, bond or other statutory requirements, be made by the trustees. There is no question as to this procedure, and it may be so done. §2877 Burns 1908, §2360 R. S. 1881. An attempt is made to invoke the aid of §§3173, 3174 Burns 1908, Acts

1895 p. 247, regarding annual reports of trustees of trusts for benevolent purposes, and that as the will specifically provides that no report be made to the court, it is void, and under §3174, *supra,* criminal in its effect. Trustees ready, willing to, and capable of taking, and to execute powers, and to select objects of the trust, and thus make them certain, and apply the funds in aid of the objects so selected, are allowable. *Board, etc.,* v. *Dinwiddie* (1894), 139 Ind. 128, 140, 37 N. E. 795. If the trust is one falling within the provisions of §§3173, 3174, *supra,* as "benevolent purposes," then the provisions of the will would have to give way to the statute, but that would not affect the validity of the will, so far as its provisions refer to reports by the trustees. *Jones* v. *Habersham* (1882), 107 U. S. 174, 2 Sup. Ct. 336, 27 L. Ed. 401; *City of Philadelphia* v. *Girard's Heirs* (1863), 45 Pa. St. 9, 84 Am. Dec. 470, and cases there collected; *Williams* v. *Williams* (1853), 8 N. Y. 525, 535, 539; *McDonogh's Exrs.* v. *Murdoch* (1853), 15 How. *367, 14 L. Ed. 732; *Grand Prairie Seminary* v. *Morgan* (1898), 171 Ill. 444, 49 N. E. 516; *Staines* v. *Burton* (1898), 17 Utah 331, 53 Pac. 1015, 70 Am. St. 788; 2 Perry, Trusts (5th ed.) §835.

The fact that the beneficiary is a parish school of a certain unincorporated religious denomination, for tuition purposes, is immaterial in view of the fact that trustees capable of taking and holding, and designating the expenditures, are designated, with provision for succession, and the specific object of the charity named, is sufficient, although the beneficiaries are uncertain in number and identity, for that is the essential feature of a charitable use, or public charity, as distinguished from a private trust. *In re Schouler* (1883), 134 Mass. 426; *Jackson* v. *Phillips* (1867), 14 Allen (Mass.) 539; *In re Kavanaugh's Estate* (1910), 143 Wis. 90, 126 N. W. 672, 28 L. R. A. (N. S.) 470; *In re O'Donnell's Estate* (1904), 209 Pa. St. 63, 58 Atl. 120; *Hoeffer* v. *Clogan* (1898), 171 Ill. 462, 49

N. E. 527, 40 L. R. A. 730, 63 Am. St. 241; *Coleman* v. *O'Leary's Exr.* (1902), 114 Ky. 388, 70 S. W. 1068; *Hadley* v. *Forsee* (1907), 203 Mo. 418, 101 S. W. 59, 14 L. R. A. (N. S.) 104 and notes; *Cottman* v. *Grace* (1889), 112 N. Y. 299, 19 N. E. 839, 3 L. R. A. 145 and notes; 2 Perry, Trusts (6th ed.) §687. It is sufficient that trustees are appointed capable of taking and ascertaining the objects, with power to effectuate them. *Haines* v. *Allen* (1881), 78 Ind. 100, 41 Am. Rep. 555; *Grand Prairie Seminary* v. *Morgan, supra; Beekman* v. *Bonsor* (1861), 23 N. Y. 298, 80 Am. Dec. 269; *Whitman* v. *Lex* (1827), 17 S. & R. 88, 17 Am. Dec. 644.

Some of the devises which have been upheld are as follows: To county commissioners of a certain county "for the use of the orphan poor, and for other destitute persons of said county." *Board, etc.,* v. *Rogers* (1876), 55 Ind. 297. To named persons as trustees to be applied "to poor families, widows, and orphans, etc., etc., of Vanderburgh county." *Erskine* v. *Whitehead* (1882), 84 Ind. 357. To a designated Board of Commissioners "to establish a home for the benefit of worthy persons who have no home, and orphan boys." *Board, etc.,* v. *Dinwiddie, supra.* "To the education of colored children in the State of Indiana." *Ex parte Lindley* (1869), 32 Ind. 367. To trustees "for the sole relief and benefit of poor persons, etc." *DeBruler* v. *Ferguson* (1876), 54 Ind. 549. To "Board of Commissioners for colored children of said (Owen) County." *Craig* v. *Secrist* (1876), 54 Ind. 419. "To the Beaver Creek Church [unincorporated], for poor children, for their tuition." *Dye* v. *Beaver Creek Church* (1896), 48 S. C. 444, 26 S. E. 717, 59 Am. St. 724. To the "vestry of St. Mary's Church" to support a parish school. *Hanson* v. *Little Sisters, etc.* (1894), 79 Md. 434, 32 Atl. 1052, 32 L. R. A. 293. To trustees for a "poor school" for the benefit of poor children of Zanesville. *McIntire's Admrs.* v. *City of Zanesville* (1867), 17 Ohio St. 352. See, also, *Wood* v. *Trustees, etc.* (1905), 26 R. I. 594, 61 Atl. 279; *In re Stickney's Will* (1897), 85

Md. 79, 36 Atl. 654, 35 L. R. A. 693, 60 Am. St. 308; *Richardson* v. *Essex Institute* (1911), 208 Mass. 311, 94 N. E. 262, 21 Ann. Cas. 1158; *Hinckley* v. *Thatcher* (1885), 139 Mass. 477, 1 N. E. 840, 52 Am. Rep. 719; *Miller* v. *Teachout* (1874), 24 Ohio St. 525; *Biscoe* v. *Thweatt* (1905), 74 Ark. 545, 86 S. W. 432, 4 Ann. Cas. 1136. It will thus be perceived that in numerous cases in this and other states, devises similar to the one in question as to the tuition fund have been upheld.

The question is more difficult as to the provision for masses. The language is "that one-third [of rents, profits and income] be used for masses every year for the repose of all poor souls." The trustees are the same as in case of the tuition fund, but it is specificially provided that the funds shall be kept separate. The objects of the testatrix's solicitude are uncertain, but it is of the essence of a charitable use or charitable trust, as distinguished from a private trust, that the beneficiaries are indefinite, and uncertain, as to persons or number, or in the definition of Lord Camden in *Jones* v. *Williams* (1767), Amb. 651, and adopted by Chancellor Kent in *Coggeshall* v. *Pelton* (1823), 7 Johns. Ch. *292, 11 Am. Dec. 471, and by the Supreme Court of the United States, "A gift to a general public use, which extends to the poor as well as to the rich." *Russell* v. *Allen* (1882), 107 U. S. 163, 167, 2 Sup. Ct. 327, 27 L. Ed. 397. See, also, *Kain* v. *Gibboney* (1879), 101 U. S. 362, 365, 25 L. Ed. 813; *Ould* v. *Washington Hospital* (1877), 95 U. S. 303, 309, 24 L. Ed. 450; *Perin* v. *Carey* (1860), 24 How. 465, 506, 16 L. Ed. 701; *Coleman* v. *O'Leary's Exr., supra; Harrington* v. *Pier* (1900), 105 Wis. 485, 82 N. W. 345, 50 L. R. A. 307, 76 Am. St. 924; *Pennoyer* v. *Wadhams* (1891), 20 Or. 274, 25 Pac. 720, 11 L. R. A. 210; *Massachusetts Society, etc.,* v. *Boston* (1886), 142 Mass. 24, 27, 6 N. E. 840; *White* v. *Ditson* (1885), 140 Mass. 351, 4 N. E. 606, 54 Am. Rep. 473; *Jackson* v. *Phil-*

*lips, supra; Detwiller* v. *Hartman* (1883), 37 N. J. Eq. 347, 353; see cases collected in *Protestant, etc., Society* v. *Churchman's Reps.* (1885), 80 Va. 718, 762.

A mass is an act of public worship, in celebration of the Eucharist as observed in the Roman Catholic Church, and formerly observed in the Church of England, and yet observed in some Anglican Churches. It is common, and public to all, as a religious ceremony, and is therefore a religious or pious use, and is a public charity, as distinguished from a private charity, which it might be if restricted to masses for the souls of designated persons. *Gilmore* v. *Lee* (1908), 237 Ill. 402, 86 N. E. 568, 127 Am. St. 330; *Hoeffer* v. *Clogan, supra; In re Schouler, supra; In re Kavanaugh's Estate, supra; In re O'Donnell's Estate, supra; Kerrigan* v. *Tabb* (1898), 39 Atl. (N. J. L.) 701; *Jackson* v. *Phillips, supra; Coleman* v. *O'Leary's Exr., supra; Webster* v. *Sughrow* (1898), 69 N. H. 380, 45 Atl. 139, 48 L. R. A. 100; *Moran* v. *Moran* (1897), 104 Iowa 216, 73 N. W. 617, 39 L. R. A. 204, 65 Am. St. 443; *Seibert's Appeal* (1886), 6 Atl. (Pa. St.) 105; *Harrison* v. *Brophy* (1898), 59 Kan. 1, 51 Pac. 883, 40 L. R. A. 721; *Rhymer's Appeal* (1880), 93 Pa. St. 142, 39 Am. Rep. 736; *Sherman* v. *Baker* (1898), 20 R. I. 446, 40 Atl. 11, 40 L. R. A. 717; *Seda* v. *Huble* (1888), 75 Iowa 429, 39 N. W. 685, 9 Am. St. 495; *Holland* v. *Alcock* (1888), 108 N. Y. 312, 329, 16 N. E. 305, 2 Am. St. 420; 1 Beach, Trusts §§345-348.

The matter presenting the most difficulty in the mind of the court is, whether courts may enforce the trust, and also whether there is any beneficiary competent to enforce, or invoke its enforcement. It will be seen that the annual income is directed to be annually disbursed; the beneficiaries are all poor souls, not the souls of the poor; but as we understand it, all souls are regarded as poor souls, objects or subjects of mediation in their behalf, and if so, all come within the classification, indefinite both as to persons, and numbers, and this brings the devise within the doctrine of

pious or charitable uses, or a public charity, if otherwise sustainable. The question of there being no beneficiary to require enforcement of the trust was before the court in *Haines* v. *Allen, supra,* in which it was held that where trustees capable of taking the legal estate were originally appointed, so that a valid use was raised in the first instance, a court of equity will supply any defect arising from disability or refusal of the trustee to act, and, also, that an otherwise indefinite devise, is sufficiently ascertained if the trustees are empowered to devote the fund in such manner as they deem just, and the purpose is not unlawful or against public policy. Under the holding in that case it appears that this will is specific as to the amount (the entire income), the time of the expenditure (each year), and the definite purpose as a charitable use, and public charity. Just how it shall be expended is not material, so long as the duty is imposed on the trustees of exercising their judgment in its expenditures for masses.

Whether the language used refers to the souls of those who have passed from this life, or includes those who are living, is alike immaterial. We understand that it is one of the doctrines of the Roman Catholic Church that masses may be and are celebrated for the living; that they are also celebrated for the benefit of those souls which are in the intermediate state of purgatory, as a doctrine of that faith. It is therefore a public and general religious service, and those who are living, and the living kindred of those dead to this life, have a direct interest in its observance, and can enforce the execution of the trust. We know that the material elements of bread and wine, and the attendant music, costs someone something, presumably the church, or its congregation or members; hence the devise in effect is a devise to the use and benefit of the public service of the church, a beneficial pious use, and a public charity, and this we gather from the instrument, was the intention of the testatrix.

The Constitution expressly secures the natural right of

worship according to conscience, and forbids any law controlling the free exercise and enjoyment of religious opinions, or interference with the rights of conscience. It necessarily follows that if as a matter of conscience the celebration of masses is either religious worship, or the exercise of religious opinions, and to many it is both, then the right to devote property to its support is a necessary incident of that right, as sacred as conscience itself, and as necessarily the enjoyment of religious opinions, in such aid as the donor may choose to extend in furtherance thereof, irrespective of what those opinions are, so long as not in violation of law or against public policy, for the courts cannot know any distinctions or standards of religious opinion or of conscience, and cannot control or define either; that must rest with the individual and his Creator.

The judgment must be affirmed, and it is so ordered.

NOTE.—Reported in 101 N. E. 493. Reported and annotated in 46 L. R. A. (N. S.) 221. See, also, under (1) 40 Cyc. 997; (2) 6 Cyc. 931, 935; (3) 39 Cyc. 315; (4) 39 Cyc. 348; (5) 40 Cyc. 1767; (6) 6 Cyc. 939; (7) 6 Cyc. 920. As to trusts for religious purposes, particularly as to the validity of bequests for masses, see 65 Am. St. 118. As to the precision necessary in specifying the object or purpose of the charity, see 60 Am. Rep. 230. As to the rights and remedies of the children of a testator not provided for in the will, see 115 Am. St. 580. As to the creation of trust estates and the nomination of trustees, see 34 Am. St. 189. As to certainty as an essential element of a valid charitable trust, see 64 Am. St. 756; 27 Am. St. 512; 44 Am. Dec. 101. As to the validity of a bequest for the celebration of masses, see 14 Ann. Cas. 1025. The authorities on the question of the enforcement of general bequest for charity or religion are collated in extensive notes in 14 L. R. A. (N. S.) 49 and 37 L. R. A. (N. S.) 993.