GREENFIELD AND TURNERS FALLS STREET RAILWAY COMPANY *vs.* INHABITANTS OF GREENFIELD.

D. OSCAR LOVELL *vs.* GREENFIELD AND TURNERS FALLS STREET RAILWAY COMPANY.

Franklin.    September 20, 1904. — February 27, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Tax.    Street Railway.*

In computing the annual gross receipts for each mile of track of a street railway company for the purpose of determining the rate at which an excise tax should be assessed under R. L. c. 14, § 44, the assessors must include all tracks operated by the railway company on private lands outside the limits of any public highway as well as those on public ways.

BARKER, J.   The actions are a petition of the company for the abatement of a tax assessed just before November 1, 1902, by the assessors of Greenfield upon a proportion of its gross receipts for the year ending September 30, 1902, at the rate of two per cent, the assessors claiming to act in accordance with the provisions of R. L. c. 14, § 44, and an action of contract by the collector of Greenfield to recover the amount of the tax so assessed.

The cases were heard in the Superior Court on an agreed statement of facts with judgment in each case against the railway company, and are before us upon the company's appeal.

The question for decision is whether the company's "annual gross receipts for each mile of track . . . computed upon the aggregate of said annual gross receipts", within the meaning of the second paragraph of § 44 of R. L. c. 14, were more or less than $4,000. If more than that sum, the percentage of two per cent used by the assessors in laying the tax was right, and the company's petition for abatement should be denied and the judgment against the company for the amount of the tax should be affirmed. If less than $4,000 per mile the rate should have been one per cent instead of two, and the company is entitled to relief.

The contention of the town is that in order to obtain the percentages under the second paragraph of § 44, " the annual gross receipts for each mile of track" are to be computed by dividing the annual gross receipts for the year ending on the preceding thirtieth of September by the number of miles of track operated by the company in public streets only.   In the present instance it is agreed that that number of miles was eleven and two hundred and thirteen one thousandths and that the gross receipts were $49,349.11, or more than $4,000 per mile, so computed. There were three and eight hundred and sixty-two one thousandths miles of track operated by the company on private land without the limits of any public highway.   The contention of the company is that the percentage is to be obtained by dividing the annual gross receipts of $49,349.11 by the whole number of miles of track operated, which it is agreed was fifteen and seventy-five one thousandths miles, in which case the annual gross receipts for each mile of track were less than $4,000, and the true percentage was one instead of two per cent.

The question involved is of considerable importance for the reason that in the year 1902 there were more than sixty street railway corporations in the State, having some part of their tracks outside of the public ways, and liable to assessment under the section in at least two hundred and eighty-one cities or towns, and that the percentage of gross receipts to be used by the assessors of these places in laying taxes under § 44 may in any instance be made greater or less in accordance with the construction to be given to the section.

In construing a statute we ordinarily are to give the language its usual meaning. It is conceded that if the decision depended upon the words of the second paragraph of the section alone we must hold that the total length of all track would be the divisor and the entire earnings the dividend. There can be no question that such is the ordinary meaning of the words " gross receipts for each mile of track."

It is also conceded that this section is a re-enactment of St. 1898, c. 578, § 7, without change of meaning. The words used in the second paragraph of that section are " annual gross receipts per mile of track operated", the words " and computed upon the aggregate of said annual gross receipts " having been inserted by the revising commissioners in their draft, evidently because there was only authority by implication in St. 1898, c. 578, § 7, to make the computation of gross receipts per mile, and no specific authority. See Commissioners' Report, c. 14, § 45, lines 13 and 14.

The argument in support of the contention of the town is that in the return to the local assessors required of the company by R. L. c. 14, § 43, the total length of track operated by it is not required to be stated, while the length of track operated by it in public ways in the particular city or town and also the total length of track operated by it in all public ways are to be stated. It is assumed that the statements of the return are the only data before the assessors from which to make the assessment. But they have other means of information.

The necessity of some return to the assessors comes from this: First, no other return than that to be made to them states the length of track operated by the company in public ways in the particular city or town whose assessors are to lay the tax, and

without that return the proportion which they are required by the first paragraph of § 44 to use in making the assessment could not be determined. Second, the gross receipts for the year ending on the preceding thirtieth of September would not be accessible from the returns to the railroad commissioners in season for the laying of the tax on or before the first day of November, without the return to the assessors.

Neither § 7 of c. 578 of St. 1898, nor § 44 of c. 14 of the Revised Laws, requires the assessors to lay the tax upon the return made to them by the company. That return is like the list of taxable property required by statute to be made by every property holder for the information of the assessors, and no more limits or binds them than does the taxpayers' list. The rule of assessment is given in § 44, and in applying it the assessors are to use any information within reach. Because there is within their reach material for making every computation necessary in assessing the tax as directed by the language of § 7 of the original act and of § 44 of R. L. c. 14, it is not a sound construction to impute to that language a sense other than the ordinary and usual meaning of the words.

The argument from the provisions of § 45 is of no weight. The provision there made for a revision of the tax by the board of railroad commissioners may be availed of in any and every instance, and the fact that there is such a provision has no bearing whatever upon the question how § 44 should be construed.

We are of opinion that the company is entitled to an abatement upon its petition of one half of the amount of tax assessed against it and that it is entitled to judgment in the other action.

*So ordered.*

The case was argued at the bar in September, 1904, before *Knowlton*, C. J., *Barker, Hammond, Loring,* & *Braley*, JJ., and afterwards was submitted on briefs to all the justices.

*E. W. Hardy*, for the street railway company.

*D. Malone*, for the town of Greenfield and D. Oscar Lovell.