NATICK AND COCHITUATE STREET RAILWAY COMPANY *vs.* INHABITANTS OF WELLESLEY.

Norfolk.    December 5, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Tax,* Excise.    *Street Railway,* Excise tax on gross receipts.

Under St. 1906, c. 463, Part III. §§ 134, 135, in computing the excise tax which is to be assessed by the assessors of every city and town in which a street railway is operated on each street railway company operating a railway therein of an amount equal to such proportion of the percentages named in the statute of the gross receipts of such company as the length of tracks operated by it in public ways and places of such city or town bears to the total length of tracks operated by it in public ways and places, the gross earnings of such a company, actually operating its road on the thirtieth day of September in any year, must be ascertained by dividing its total gross receipts for the preceding year by the number of miles of its tracks upon that day, regardless of the changes in its mileage that have taken place during the year by reason of consolidation or otherwise.

PETITION filed in the Superior Court on April 4, 1910, under R. L. c. 12, § 78, now St. 1909, c. 490, Part I. § 77, appealing from the refusal of the assessors of the town of Wellesley to abate an excise tax of $632.06 upon the gross earnings of the Natick and Cochituate Street Railway Company for the year ending September 30, 1909, assessed under St. 1906, c. 463, Part III. §§ 133–135.

In the Superior Court the case was submitted to *King,* J., upon an agreed statement of facts as follows:

From October 1, 1908, through November 30, 1908, the Natick

and Cochituate Street Railway Company operated street railway tracks in the town of Wellesley.

On October 15, 1909, that company filed with the board of assessors of the town of Wellesley a sworn statement, from which it appeared that in the above named period of two months the number of miles operated was 6.184. The total number of miles of track belonging to the company was 18.758 and the gross passenger earnings for the period were $16,471.35.

On December 1, 1908, acting under St. 1906, c. 463, Part III. §§ 53 *et seq.*, and in accordance with an order of the board of railroad commissioners dated November 23, 1908, the Natick and Cochituate Street Railway Company and also the Westborough and Hopkinton Street Railway Company consolidated with the Middlesex and Boston Street Railway Company and turned over all its property and franchises to the consolidated company, which bears the name of Middlesex and Boston Street Railway Company. The gross passenger earnings of the Middlesex and Boston Street Railway Company in the two months, beginning October 1, 1908, and ending November 30, 1908, were $15,551.43.

From December 1, the Middlesex and Boston Street Railway Company operated the tracks in the town of Wellesley and elsewhere formerly belonging to the Natick and Cochituate Street Railway Company and also the tracks formerly belonging to the Westborough and Hopkinton Street Railway Company. The total mileage of tracks belonging to the consolidated company was 41.155, and the mileage in the town of Wellesley was 6.184. In the period from December 1 to July 1 the gross passenger earnings of the Middlesex and Boston Street Railway Company were $113,118.40.

On July 1, 1909, acting under St. 1906, c. 463, Part III. §§ 53 *et seq.*, and under an order of the board of railroad commissioners dated June 25, 1909, the Newton Street Railway Company was absorbed by the Middlesex and Boston Street Railway Company, which acquired its property and franchises. The Newton Street Railway Company had 43.974 miles of track and the total mileage of the Middlesex and Boston was therefore increased to 85.129 miles. New track was built in Natick to the amount of .563 miles, making the total September 30, 1909, 85.692 miles.

The gross passenger earnings of the Middlesex and Boston Street Railway Company operating this mileage from July 1 to October 1, 1909, were $169,258.42. The gross passenger earnings of the Newton Street Railway Company for the nine months ending June 30, 1909, were $253,536.98, and on these earnings the Newton Street Railway Company made returns and paid the excise tax in the cities and towns in which it operated.

On October 15, 1909, the Middlesex and Boston Street Railway Company filed with the assessors of the town of Wellesley a sworn return giving details for the assessment of the excise tax.

On December 16, 1909, the board of assessors of the town of Wellesley assessed upon the Natick and Cochituate Street Railway Company an excise tax of $632.06. The amount of the bill was the amount of the tax for the previous year (1908). No tax was assessed upon the Middlesex and Boston Street Railway Company.

On January 27, 1910, the Natick and Cochituate Street Railway Company applied to the board of assessors of the town of Wellesley for an abatement of the tax of $632.06 assessed upon that company. A hearing was given by the assessors on this application, and on February 17, 1910, the board of assessors gave to the company notice that the application had been refused.

It was agreed that the assessment in question, although made upon the Natick and Cochituate Street Railway Company, might be treated as having been assessed to the Middlesex and Boston Street Railway Company, and that, should the court decide that the amount of the tax should be abated to the amount called for by the returns of the two companies filed on October 15, 1909, the assessment upon the Natick and Cochituate Street Railway Company should be reduced to the aggregate amount called for by said returns, that is, to $269.30.

It further was agreed that if, upon the foregoing facts the assessors of Wellesley could, upon any theory, have assessed a tax of $632.06 the tax was to stand. It also was agreed that the tax had been paid.

It was agreed that the above might be assumed to be the facts, in the absence of other evidence, and that the court might draw inferences of fact.

The town of Wellesley asked the judge to make the following rulings:

" 1.  Upon all the evidence the petitioner is not entitled to an abatement.

" 2.  In assessing an excise tax under the St. 1909, c. 490, Part III. § 48, the assessors of a town are not bound by the return of a street railway company, but may use any information they can obtain in the assessment of the tax.   [This ruling was made.]

" 3.  In making the return required by St. 1909, c. 490, Part III. § 47, the street railway company is not justified in taking the mileage as of any particular date and is not justified in taking the mileage as of September 30, or as the last day of the financial year of the street railway company.

" 4.  If the mileage of a street railway, liable to an excise tax under said § 47, varies during a financial year, the mere fact that the statute does not provide any *prima facie* method for ascertaining the mileage to be taken in determining the annual gross earnings per mile does not prevent taking the average mileage for the year, and if a street railway company does not, in such a case, take the average mileage for the year, the assessors of a town are justified in disregarding the return of the street railway company and in taking the average mileage of a year in ascertaining the gross earnings per mile.

" 5.  In assessing an excise tax under § 48, the assessors, if there are consolidations during a financial year, may disregard the consolidation and treat the consolidated company as one whole company, taking its earnings, including those of the constituent companies for the entire year, and taking the mileage including that of the constituent companies for the entire year, and in assessing a tax based upon the earnings and mileage so ascertained.

" 6.  In assessing a tax upon a street railway company which has taken over other street railway corporations during a financial year, the assessors are justified in assessing a tax upon the consolidated company based upon the earnings of the consolidated company and the average mileage of the consolidated company for the portion of the year during which the consolidated company operated.

" 7. It is the duty of a consolidated company which takes over other companies during a financial year to pay the tax of the company so taken over, and to make a return for those companies. [This ruling was made except the last clause.]

" 8. Taking the mileage of a street railway company as of the last day of the financial year would exclude the payment of tax if the street railway company was not in existence upon that date or was not operating upon that date.

" 9. The tax may be assessed after November 15, in any year as well as before. [This ruling was made.]

" 10. It is the duty of a consolidated company to pay the excise tax based upon the earnings and mileage of its entire system for the entire year including that of its constituent companies.

" 11. The mileage which is to be taken in ascertaining the excise tax is the mileage out of which and in connection with which the earnings have been produced and not an arbitrary mileage based upon the mileage of some specific date.

" 12. The Natick and Cochituate Street Railway Company was not required by law to make an excise tax return for the period prior to its consolidation with the Middlesex and Boston Street Railway Company, but the Middlesex and Boston Street Railway Company was bound to make such a return in connection with its own return and to pay the excise tax assessed thereon.

" 13. In determining excise tax under said § 47, the assessors may either treat the consolidated company as though it had been one corporation through the entire year and take its earnings and mileage as those of one company, including as a part, the mileage and earnings of all the companies consolidated with it during the year, and assess a tax thereon, or may take the earnings and mileage of each constituent company during the period in which they operate separately and independently and assess a tax thereon and take the earnings of the consolidated company and the average mileage of the consolidated company for the period after the consolidation and assess a tax thereon."

The judge made the second and ninth rulings requested as above, and made a part of the seventh ruling requested omitting the words " and to make a return for those companies," and refused to make any of the other rulings requested. He found that the petitioner was entitled to an abatement of a part of the tax

assessed against it, to wit, to an abatement of the sum of
$362.76, thereby reducing the tax by such abatement to the sum
of $269.30.   The respondent alleged exceptions.

*G. A. Sweetser*, for the respondent.

*A. A. Ballantine*, for the petitioner.

SHELDON, J.   The difficulty here arises from the fact that the
Legislature has not in terms provided for a case in which the
mileage of a street railway has been of different lengths at dif-
ferent times of the year, according as it has been increased or
diminished by new construction or abandonment, by purchases
or sales, or, as here, by consolidations of different companies.

It was provided by St. 1906, c. 463, Part III. § 133, as follows:
"A street railway company, including a company whose lines are
located partly within and partly without the limits of the Com-
monwealth, whether chartered or organized under the laws of
this Commonwealth or elsewhere, shall annually, on or before the
fifteenth day of October, make and file in the office of the board
of assessors of every city and town in which any part of the rail-
way operated by it is situated a return signed and sworn to by its
president and treasurer, stating the length of track operated by
it in public ways and places in such city or town, and also the
total length of track operated by it in public ways and places,
determined as provided in section one hundred and twenty-five,
and also the amount of its gross receipts during the year ending
on the preceding thirtieth day of September, including therein
all amounts received by it from the operation of its railway, but
excluding income derived from sale of power, rental of tracks or
other sources."   And by § 134 it was provided that on or before
the first day of November annually, the assessors of every city
or town in which a street railway was operated should assess
upon the company operating the railway an excise tax, to be
assessed upon the average gross receipts per mile according to
the proportions between the length of tracks operated by it in
public ways and places in such city or town and the total length
of tracks operated by it in public ways or places.   This tax is
assessed in lieu of the obligations formerly imposed on street
railway companies to keep in repair certain parts of the public
ways and places in which their tracks are laid.   *Greenfield &*
*Turners Falls Street Railway* v. *Greenfield*, 187 Mass. 352.   A

method was provided therefore by petition to the board of railroad commissioners for the revision of the amount of this excise or commutation tax; and it was enacted by § 137 of the same statute, as amended by St. 1907, c. 318, that the total amount of this tax received by a city or town should be applied towards the repair and maintenance of its public ways and the removal of snow therefrom.    See now St. 1909, c. 490, Part III. §§ 47–51.

The petitioner's contention, which was adopted in the Superior Court, is that in such a case as this the statute requires each one of the original companies to make a return to each city or town for the period during which it actually operated tracks in such city or town before the consolidation; that the consolidated company must make a return of the gross earnings actually received by it during the year and of the length of its trackage on the thirtieth day of September; and that the tax of each company is to be determined by dividing its gross earnings by the number of miles operated by it on the last day of the period of its earnings, — that is, upon the thirtieth day of September if the company was then in existence and operating its road.    It is only the last part of this contention however that it now is necessary for us to pass upon; for the parties have agreed that the assessment here in question, although made to the petitioner, may be treated as if it had been made to the consolidated company, the Middlesex and Boston Street Railway Company, and that if upon the agreed facts the assessors of Wellesley could upon any theory have assessed the tax which they did assess, the tax is to stand.    And likewise it is not disputed that if the correct divisor of the total gross receipts of the consolidated company for the year ending September 30, 1909, was the number of miles operated by it on that day, the abatement made by the Superior Court was proper.

The respondent makes two alternative contentions.    First, it contends that the proper divisor of the total earnings of the consolidated company for the year ending September 30 was not the number of miles operated by the company on that day, a number much increased by the consolidations which had been made during the year, but the average number of miles of track operated during the year.    This contention it presented to the judge at the trial directly by its fourth and sixth requests for rulings, and

indirectly by its eleventh request. Its second contention was that the entire system of the consolidated company as it existed on September 30, 1909, should be taken as one system for the entire year ending on that day, for the purpose of assessing this excise or commutation tax, — in other words, that a tax should be assessed upon the consolidated company as if the consolidations had been made before the beginning of the tax year instead of having been made during the year, and should be assessed upon the total earnings received during the year by the constituent companies and the consolidated company taken together. It presented this contention to the judge by its fifth, tenth and twelfth requests and part of its seventh request. Its first and thirteenth requests were made upon both of its contentions. Its first, third and eleventh requests were for rulings adverse to the petitioner's contention. Its second and most of its seventh requests were given. Its eighth request becomes immaterial when the others shall have been passed upon.

The section (Sts. 1906, c. 463, Part III. § 133; 1909, c. 490, Part III. § 47) which requires a return of the total length of track operated does not fix the date upon which that length is to be taken, unless by inference. It is obvious that the length might be different at different periods of the year. But the section contains two provisions which throw some light upon the question to be decided. The return is to be made on or before the fifteenth day of October, and it is to state the length of the tracks in the particular city or town to whose assessors the report is required to be made; and the total length of tracks operated by it in other public ways and places, and also the amount of the gross receipts during the year ending on the preceding thirtieth day of September. That is, the statutory command contemplates a closing of the accounts of the company so as to show the gross receipts of the year as of a fixed date. In the absence of any fixing of the day on which the length of the tracks was to be determined, it would be natural to say that the same day was contemplated for this purpose as was fixed for the statement of the gross receipts. The day intended could not be a day either before or after the thirtieth day of September; and it seems to us, when there is no such expression of the legislative will, that it would be putting a strained construction upon the words of

the statute to say that they required a computation of the average number of miles operated during the year in each city or town and in the aggregate line of the road. But another criterion is furnished by the statute. It prescribes as a rule for determining the length of track that it is to be " determined as provided in " § 125 of St. 1906, c. 463, Part III.; § 40 of St. 1909, c. 490, Part III. Referring to these two sections, we find that in slightly different words, but with manifestly the same meaning, they require street railway companies to state in their returns the length of track operated by them in each city or town on the thirtieth of September, to be determined by measuring as single track the total length of all tracks operated by them, including sidings and turn-outs, whether owned or leased by them, or over which they have trackage rights only. It is plain that under the rule here prescribed the companies must not only measure the length of their tracks by including all sidings and turn-outs and by treating all tracks, whether single or double, as single tracks, but this method of measurement must be applied to the state of things existing on the thirtieth day of September. A return of measurements made on any other day, or of the average length of tracks where there had been during the year any new construction or abandonment or any other change of trackage, would not comply with the requirements of the statute. The fact that in practice the fixing of the day upon which the facts are to be ascertained is of quite as much importance as determining the mode of measurement to be adopted, makes it at least probable that the reference in the one section to the other was intended to include the first element as well as the second. Both of these elements are alike essential in making a true statement of the length of trackage operated.

It is said in behalf of the town that taking the mileage as of the last day of the tax year works an injustice, in that the gross earnings per mile of track are unduly decreased by dividing the total earnings by a length of mileage of which a part, possibly a large part, has not been in existence and has earned nothing during perhaps a large part of the year. But the same argument might be made as to the distribution of the corporate franchise tax provided for by St. 1909, c. 490, Part III. § 43, which under § 64 of the same act is to be " apportioned among the

several cities and towns in proportion to the length of tracks operated by such company in said cities and towns respectively." This length of tracks must by the terms of § 40 of the same act be the length measured as therein prescribed upon the thirtieth day of September; and any city or town in which there had been a large increase of trackage during the preceding year, or a great diminution of trackage during that time, would receive proportionally an increased or diminished share of the corporate franchise tax to the corresponding loss or gain of the other cities or towns in which the same company had tracks. The truth seems to be that to avoid the necessity of making unduly complicated computations and because in the long run there seemed no likelihood of serious injustice even if there might be some temporary inequalities, the Legislature saw fit to provide that in those matters the determination should be made in all respects as of a fixed day, just as in the assessment of ordinary taxes individuals are to be taxed upon such taxable property as they are found to possess upon a day certain, although when the amount of their tax has been ascertained and becomes payable, it generally will be the case that some persons will have to pay a tax upon an amount in excess of what they are worth while others will find that large amounts of property which they have acquired since the day of assessment have wholly escaped the burden of taxation. In each case, the Legislature has reasonably determined that in this way the private burden and the public benefit of taxation will be distributed and received as justly and proportionately as is really practicable; and this contention we cannot revise.

For similar reasons, we cannot adopt the second contention made by the town. We find nowhere in the statutes any reference to such a mode of computation or any indication that this was intended by the Legislature. A consolidated company does succeed to all the liabilities and obligations of its constituent companies. It must pay the taxes for which they were liable. It must make its own returns and pay its own taxes. But we know of no authority and no ground of principle for saying that consolidations which took place respectively in December of 1908 and July of 1909 can be treated by assessors of taxes as having taken place before September 30, 1908. What we have

said as to a disregard by the Legislature of some temporary inequalities in the assessment and distribution of this excise or commutation tax by the assumption of a day certain for the making up of all accounts and the ascertainment of the then existing state of affairs, applies also to this contention.

Moreover it must be borne in mind that this claim of the town, if adopted, would be applicable, not only to a case of consolidation such as is here presented, but to cases where the road of one company has been purchased or acquired under adversary proceedings by another. We gather from an opinion of the Attorney General, to which we have been referred by counsel (Attorney General's Report for 1908, p. 2), that a part of the system of the present consolidated company was purchased by it in July, 1907, from the receiver of another company. If so, the receiver, who doubtless would need the books of the insolvent company for his own purposes, probably did not turn them over to the purchasing company, and that company would be unable to make in the next October the returns as to the operations of the insolvent company between September 30, 1906, and July, 1907, which according to the present contention of the town it would be bound to make under a penalty. Other situations readily can be imagined in which a company would be unable to give the previous gross receipts of other companies whose lines it had acquired. Nor if the officers of those acquired companies had failed to keep proper books of account or had falsified their accounts, would it be just to visit a penalty for such wrongdoings upon the acquiring company, which presumably acted with complete innocence. We ought not to suppose, in the absence of provisions of the statutes, that the Legislature intended to impose a penalty upon a corporation for anything but its own act or the act of its authorized officers or agents.

We are led to the conclusion that the contention of the petitioner is correct, that the gross earnings per mile of a street railway company under our statutes, certainly of such a company actually operating its road on the thirtieth day of September, must be ascertained by dividing its total gross receipts for the year by the number of miles of its trackage upon that day.

It follows that the respondent's exceptions must be overruled.

*So ordered.*