### LOUIE S. MILLER *vs.* CITY OF FITCHBURG.

Worcester. September 30, 1901. — October 18, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Tax. Waterworks. Municipal Corporations.*

St. 1893, c. 352, § 1, provides, that a city or town holding property, taken by purchase or otherwise, for the purposes of its water supply, in another city or town, shall not pay any tax on such property, but shall make to the town where the property is situated the payments therein described "*provided, however,* that any land or building from which any revenue in the nature of rent is received from any person occupying or using the same shall be subject to taxation." Under authority given by St. 1892, c. 60, § 4, the city of Fitchburg bought Wyman's reservoir in Westminster with all the rights of Wyman in the pond and reservoir. The money paid for it was charged by the city to its water loan account. The city proceeded to construct a reservoir occupying substantially the same position as Wyman's reservoir and a dam and gatehouse. The city's principal sources of water supply, authorized by §§ 1 and 2 of the last named act, were Wachusett lake in Princeton and Meeting-house pond in Westminster, great ponds whose natural outlets flow through Wyman's reservoir and thence into a branch of the Nashua River which runs through Fitchburg. In 1895, the city made an agreement with the owners of mills on the branch of the Nashua River flowing through the city, by which, in consideration of the release of damages on the part of the mill owners, the city agreed to maintain Wyman's reservoir for the use of such owners, and to allow the water to flow only into the natural channel of the Nashua River, except in case of a serious conflagration or in case of a break in the pipes above Wyman's reservoir. In such case the city reserved the right to withdraw the waters of the reservoir into the pipes which supplied the city with water, and also reserved the right to withdraw the waters of the reservoir, when necessary, for the purpose of repairing the pipes laid upon the bottom of it. Wyman's dam and gatehouse were necessary in order to turn the waters of Wyman's reservoir into the distributing pipes and would always be necessary, if it were desired to utilize the waters of Wyman's reservoir for distribution to the inhabitants of the city, but the dam at Wyman's reservoir was not necessary in order to store the water of Meeting-house pond or Wachusett lake for distribution to the inhabitants, nor to aid in its distribution, and was built at a lower level than the point at which the water for the city was admitted to the distributing pipes at the distributing basin then in use, called Smith's basin. In 1899, the property of the city of Fitchburg at Wyman's reservoir was assessed by the town of Westminster as "dam and land flowed" and the collector sued the city for the tax. It was agreed, that the city did not receive any revenue in the nature of rent or otherwise for the use of the dam or gatehouse or the waters or land of Wyman's reservoir, except such rights or benefits, if any, as accrued to it under the mill owners' agreement. *Held,* that the land and dam were purchased by the defendant "for the purposes of its water supply" and that the exemption from taxation in St. 1893, c. 352, applied to it, and on the facts it could not

be said that the defendant received any "revenue in the nature of rent" from any person occupying or using the property; therefore, that the action under Pub. Sts. c. 11, could not be maintained.

CONTRACT, by the collector of taxes of the town of Westminster, to recover the amount of a tax assessed in 1899, under Pub. Sts. c. 11, upon certain real estate lying in Westminster and belonging to the city of Fitchburg. Writ dated October 25, 1900.

The case was heard in the Superior Court upon agreed facts, by *Stevens*, J., who decided in favor of the defendant, and reported the case for the determination of this court. If the plaintiff was entitled to recover, judgment was to be entered for him in the sum of $680, and interest from October 1, 1899; otherwise, judgment for the defendant. The case is stated in the opinion.

*J. A. Stiles*, for the plaintiff.

*W. P. Hall*, for the defendant.

LATHROP, J. On December 1, 1891, the city council of the defendant passed a vote that the mayor be requested to petition the General Court to give the defendant the right "to take and hold, by purchase or otherwise, for the purpose of supplying said city with pure water, the waters of Wachusett lake in the town of Princeton, the waters of Meeting-house pond in the town of Westminster, and the waters of Wyman's reservoir in the town of Westminster, for a compensating reservoir for all damages that would otherwise result to mill owners, and for authority to take in like manner all lands, water rights, etc., as shall be necessary for the use and enjoyment of said waters taken or purchased."

In pursuance of this vote the mayor petitioned the General Court to grant such authority; and the St. of 1892, c. 60, was enacted, which, by § 10, was to take effect upon its passage, and was approved March 14, 1892.

By §§ 1 and 2 of this act the city was authorized to take and hold, by purchase or otherwise, the waters of Wachusett lake in the towns of Princeton and Westminster, and of Meeting-house pond in the town of Westminster, and the waters which flow into and from the lake and pond, and any water rights connected therewith, and convey the water to and into the city, for

the purpose of supplying water to its inhabitants, and to take
and hold, by purchase or otherwise, such land on and around the
margin of the lake and pond, not exceeding five rods in width,
as might be necessary for the preservation and purity of the
waters.

Section 4 of the act is as follows: "Said city is also author-
ized to take and hold, by purchase or otherwise, the waters of
Wyman's reservoir, so-called, in the town of Westminster, and
the waters which flow into and from the same, and any water
rights connected therewith, to be used as a compensating reser-
voir for all damages that would otherwise arise to mill owners
by reason of the taking and diverting of the waters of Wachusett
lake and Meeting-house pond; and to take and hold in like man-
ner such lands as may be necessary for building, erecting and
maintaining a dam for storing. and distributing said waters.
Said city is authorized to contract with mill owners whose rights
are affected, in relation to the manner and mode of using, con-
trolling and operating said compensating reservoir."

Wachusett lake and Meeting-house pond are great ponds whose
natural outlets flow through Wyman's reservoir, and thence into
a branch of the Nashua River, carrying the waters through the
defendant city.

On April 26, 1892, in pursuance of the power given by § 4,
above cited, and of a vote of the city council, the city bought of
one Wyman various tracts of land in Westminster, including
therein the whole of Wyman's reservoir, together with all the
rights of Wyman in the waters of the pond and reservoir. The
purchase money so expended was charged by the city to its
water loan account. After this purchase, the city proceeded to
construct a reservoir, occupying substantially the same position
as Wyman's reservoir, and a dam, gatehouse, etc. The new
dam was built where the old dam of Wyman's reservoir had
stood.

This land in 1899 was assessed by the town of Westminster
as " dam and land flowed," and this is the tax sought to be
collected in this action.

The city also bought land above the reservoir, and constructed
therein a basin, now known as Smith's basin, a dam and a gate-
house. This was for the purpose of turning the waters of Meet-

ing-house pond into the distributing pipes for the use of the inhabitants of the city, which are laid from this basin to, through and beyond Wyman's reservoir. These pipes go into a chamber of the gatehouse at the dam of Wyman's reservoir in such a manner that, by shutting certain gates and opening certain other gates, the waters of Wyman's reservoir can be drawn into the pipes leading from Meeting-house pond to the city, and distributed to its inhabitants, though in fact no water has yet been drawn from this reservoir for use by the city.

On April 10, 1895, the city made an agreement with the owners of mills on the branch of the Nashua River flowing through the city, by which, in consideration of the release of damages on the part of the mill owners, the city agreed to maintain the reservoir for the use of such owners, and to allow the water to flow only into the natural channel of the Nashua River, except in case of a serious conflagration in West Fitchburg or in the city of Fitchburg proper, or in case of a break in the pipes above Wyman's reservoir. In such case the city reserved the right to draw the waters of the reservoir into the pipes which supply the city with water. The city also reserved the right to withdraw the waters of the reservoir, when necessary, for the purpose of repairing the pipes laid upon the bottom thereof.

The agreed facts contain also the following statements :

" Said Wyman's dam and gatehouse is necessary at the present time in order to turn the waters of Wyman's reservoir into the distributing pipes and would always be necessary if it were desired to utilize the waters of Wyman's reservoir for distribution to the inhabitants of the city ; but said dam at Wyman's reservoir, as a mechanical proposition, is not necessary at the present time in order to store the water of Meeting-house pond or Wachusett lake, for distribution to the inhabitants, nor to aid in its distribution, and is built at a level lower than the point at which water for the city is and was admitted to the distributing pipes at Smith's basin.

" All the lands, waters, and water rights conveyed by said Franklin Wyman to the city of Fitchburg were purchased by the city at its sole expense and became the property of the city. All the dams, gates, and gatehouses erected or maintained thereon by the city, and the Wyman dam, have been so erected

and maintained at the sole expense of the city and are the property of the city. All the water pipes laid or maintained by the city in, through and upon said premises, have been so laid and maintained at its own expense by the city, and are the property of the city. The city has also at its own expense provided for the adjustment of the gates at said Wyman's reservoir at Wyman's dam and the regulation of the flow of the waters thereof in the manner stipulated in the aforesaid agreement with the mill owners.

" The city has never received, nor does the city now receive, any revenue in the nature of rent or otherwise from any person occupying or using the Wyman dam, gates and gatehouses at the Wyman's reservoir, the waters and water rights in said reservoir and the land flowed by said waters, except such rights or benefits, if any, as have accrued to the city under said mill owners' agreement."

By the St. of 1893, c. 352, § 1, it is provided : " Any city or town holding property, taken by purchase or otherwise, for the purposes of its water supply, whether for domestic, manufacturing or other purposes, in another city or town, shall not pay any tax on such property, but shall hereafter in the month of September annually pay to such other city or town for each lot of land held therein for said purposes an amount of money equal to the rate of taxation per thousand dollars in such other city or town, for every one thousand dollars of the average of the assessed valuations of the land, without buildings or other structures, for the three years next preceding the taking thereof, the said assessed valuation for each year being first reduced by the amount of all abatements allowed thereon : provided, however, that any land or building from which any revenue in the nature of rent is received from any person occupying or using the same shall be subject to taxation."

If this act applies to the land sought to be taxed in this case, it is obvious that the plaintiff cannot recover a tax assessed under the Pub. Sts. c. 11. The question is, therefore, whether the land and dam were purchased by the defendant " for the purposes of its water supply." We are of opinion that this question must be answered in the affirmative. What was done by the defendant in the case before us was authorized by the

Legislature, and was in pursuance of a scheme to supply the city with pure water. It was as much a part of the scheme as any other part, and was not a measure standing by itself. It cannot be questioned that it is for the Legislature to decide whether a public exigency or necessity existed for the establishment of the reservoir, although it is for the court to determine whether the use is or is not a public one. *Wayland* v. *County Commissioners*, 4 Gray, 500. *Talbot* v. *Hudson*, 16 Gray, 417. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446.

Before the St. of 1893, c. 352, lands and structures owned and used by a city or town for the purposes of its water supply, and situated in another city or town, were held to be exempt from taxation as public works. *Wayland* v. *County Commissioners*, 4 Gray, 500. On the same principle land and structures of a railroad corporation, included within its location and used for railroad purposes are exempt from taxation, and from special assessments. *Worcester* v. *Western Railroad*, 4 Met. 564. *Charlestown* v. *County Commissioners*, 1 Allen, 199. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95, and cases cited. So as to gravel pits owned by one city within the limits of another, and used for public purposes. *Somerville* v. *Waltham*, 170 Mass. 160.

The question remains whether the case falls within the proviso at the end of § 1 of the St. of 1893, c. 352. We are of opinion that it cannot fairly be said that any " revenue in the nature of rent " is received by the defendant " from any person occupying or using the same." This applies to a case where a parcel of land or building not used for water purposes is let to a person, or used by him, and the city derives revenue therefrom in the nature of rent. It does not seem to us to have any bearing upon the facts of this case.

*Judgment for the defendant.*