HEMAN M. BURR *vs.* CITY OF BOSTON.

Suffolk.    November 17, 1910. — May 16, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Tax,* Exemption.    *Charity.*

Real estate in a city, which is held by that city in trust to apply the income thereof to the maintenance and improvement of its common and parks, is held upon a valid public charitable trust and for that reason is not subject to taxation.

Whether a city or town can tax real estate owned by itself, unless by assessment under such a specific provision as that contained in St. 1909, c. 490, Part II. § 67, in regard to land taken or purchased for non-payment of previous taxes, here was referred to as a question which was not passed upon.

CONTRACT for $470.25 paid by the plaintiff under protest on February 9, 1910, as a tax assessed upon the land with the building thereon numbered 31 on Chestnut Street in Boston, which was sold and conveyed to the plaintiff by the defendant on February 4, 1910, and was alleged by the defendant to be subject to an assessment for such taxes made on May 1, 1909, when the property was held by the defendant under a devise contained in a codicil to the will of George F. Parkman, late of Boston, which gave the residue of the estate of the testator to the defendant to constitute a fund, the income of which was to be applied to the maintenance and improvement of the Common and parks of the defendant.    Writ dated February 14, 1910.

The answer contained a general denial and an allegation that the tax paid as alleged by the plaintiff was legal and valid and was justly due from the plaintiff.

In the Superior Court the case was submitted upon an agreed statement of facts to *King,* J., who found for the plaintiff in the sum of $487.94 and ordered judgment for that amount.    At the request of the parties the judge reported the case upon the pleadings and the agreed facts for determination by this court.

The case was argued at the bar in November, 1910, before *Knowlton,* C. J., *Morton, Loring, Sheldon,* & *Rugg,* JJ., and afterwards was submitted on briefs to all the justices.

*R. F. Sturgis,* for the plaintiff.

*T. M. Babson,* for the defendant.

SHELDON, J.　We assume, in accordance with the contention of the defendant, that this devise to the city of Boston did not vest absolutely in the city until its acceptance thereof (*Dailey* v. *New Haven,* 60 Conn. 314), and that as the city might elect either to accept or to decline the proposed benefaction, so it might make a conditional acceptance thereof, and then would be bound only by the terms of the devise and its own conditional acceptance.　But it did unconditionally accept this devise on the terms on which it was made; and the provisions of its order of acceptance, authorizing its treasurer to receive and hold the devise, were added merely to designate the officer who should receive it and have charge thereof.　As all the debts and legacies had been paid or funds set apart for their payment when the order of acceptance was passed in March, 1909, it follows that the title to all the real estate covered by the devise vested at least then in the city as its property, and this included the Chestnut Street estate here spoken of.　The case presents no question of equitable conversion.　On the first day of May this was the property of the city, though held in trust for a public use.　On that day, the board of assessors assessed a tax thereon to "the devisees of George F. Parkman"; and the question is whether the tax was valid.

It is not contended that the property was exempt from taxation under any of the provisions of R. L. c. 12, §§ 5 *et seq.,* but the plaintiff contends that it could not be legally taxed because of the fact that the title to it was in the city itself upon the trust stated.

There is no doubt that land held by one municipal corporation within the territorial limits of another for a public or governmental use is exempt from taxation, not by reason of any specific statutory exemption, but upon what always has been assumed to be the intention of the Legislature in the statutes relating to taxation.　*Milford Water Co.* v. *Hopkinton,* 192 Mass. 491, and cases cited.　*A fortiori* this is so if the land is situated in the city which owns it.　On the other hand such property while not actually put to any public use, but availed of for purposes of revenue merely, is taxable by the city or town in which it is situated.　*Essex County* v. *Salem,* 153 Mass. 141.　In that case the court said: "The property of counties is held exempt

from taxation when appropriated to public uses, because courts infer that it is not the intention of the Legislature to tax property so used in the absence of any express declaration that it should be taxed. This implication is made on account of the nature of the uses to which the property is appropriated. It is not to be presumed that the Legislature intended to tax the instrumentalities of government. *Worcester* v. *Mayor & Aldermen of Worcester,* 116 Mass. 193." And farther on the court added: "In the absence of any express exemption of the property of counties from taxation, an exemption can be implied only when the property is actually appropriated to public uses. This is the principle which underlies all our decisions in cases analogous to the present, and we see no ground on which it ought to be extended to the property of a county actually devoted to private uses which are not incidental to the performance of public duties."

In the case at bar the property was held by the city in trust to apply the income thereof to the maintenance and improvement of its Common and parks. This is a valid public charitable trust. *Bartlett, petitioner,* 163 Mass. 509, 514. It supplies funds for a purpose which otherwise must be provided for by taxation, and so far tends to lighten the public burdens. This is strictly a public use.

We need not consider whether the city collector could maintain an action to recover this tax under R. L. c. 13, § 32. Such a suit of course must be brought against the city itself, since that alone is properly described by the language of the assessment, which can be applied to no other natural or artificial person. For such a tax the primary liability is upon the person taxed and not upon the property for which the tax is assessed; *Dunham* v. *Lowell,* 200 Mass. 468; and it might be a serious question whether the Legislature intended in any case to cast such primary liability upon the city or town to which that tax is to be paid. But as we have said, that question is not raised.

This land however was not used directly for a public purpose, as if for example it were itself made into a public park, or were used as the site of a city hall or library building. It was held in trust to apply the income to the specific public charitable purpose stated in Mr. Parkman's will. The land which was decided to

be taxable in *Essex County* v. *Salem, ubi supra*, was held and could be held by the county, until it should be applied to the contemplated public use and so should become exempt from taxation, strictly for the application of any income derived therefrom, like all other revenue of the county, to the general public purposes for which alone the money of the county could be spent. The case at bar differs from that case in two respects: First, that here the land sought to be taxed is within the territorial limits of the city which owns it; and secondly, that this land is held in trust to apply the income thereof to a specific public charity and not to the general public purposes of the city.

The general rule laid down by our decisions is that real estate situated in one city or town but owned and used by another for a specific public purpose is exempt from taxation, but that this exemption is limited to property which is directly appropriated to such a specific purpose. *Wayland* v. *County Commissioners*, 4 Gray, 500, in which it was held that land in Wayland owned and appropriated by the city of Boston under St. 1846, c. 167, for the sole purpose of supplying that city with water, was exempt from taxation; but it was expressly stated by the court that " if the land was valuable for and used for purposes other and distinct from those of the aqueduct, the property so used to the extent it was so used, would be liable to taxation." The same doctrine is affirmed in later cases. *Worcester County* v. *Worcester*, 116 Mass. 193. *Somerville* v. *Waltham*, 170 Mass. 160. *Miller* v. *Fitchburg*, 180 Mass. 32.

On the same principle, the real property of a public service corporation, so far as appropriated and used within authorized limitations, but no farther, is exempt from taxation. *Worcester* v. *Western Railroad*, 4 Met. 564. Many later cases are collected and both the general principle and its limitation are stated in *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491. Hammond, J., said in that case: " The true test is whether it [the corporation owning the land] is engaged in the administration of a public trust with power to take land for that purpose. It is the character of the use to which the property is put, and not of the party who uses it, that settles the question of exemption from taxation."

But none of these cases, and indeed no case to which our at-

tention has been called except *Lancy* v. *Boston*, 186 Mass. 128, dealt with the exemption of land owned or appropriated for a public use by the city or town in which the land was located. It was held in that case that land in which an easement had been taken by right of eminent domain either for a highway or for railroad purposes was not taxable to the owner of the fee. The general question of the right or duty of a city to tax land owned by itself within its own limits, though not appropriated or used for a public purpose, was not considered. Nor have we found any case which considers the manifest distinction between such land held upon an express trust for a specific public charitable use to which alone its income can be applied, and land which is held merely in the general ownership of the city and of which both the corpus and the income may be applied to its general purposes.

If taxes can be lawfully assessed by cities and towns upon their own lands, then it is the duty of the assessors to lay such assessments and of the collectors to enforce the payment thereof. These officers are strictly public officers and in no sense the agents or representatives of the municipalities. *Rossire* v. *Boston*, 4 Allen, 57, 58. *Dunbar* v. *Boston*, 112 Mass. 75. *Alger* v. *Easton*, 119 Mass. 77, 78. *Welch* v. *Emerson*, 206 Mass. 129, 130. *Cox* v. *Segee*, 206 Mass. 380, 382. *Gile* v. *Perkins*, 207 Mass. 172. They are bound to discharge faithfully their duty by assessing all taxable property and by enforcing payment of all taxes duly assessed and committed to them for collection. R. L. c. 12, §§ 2, 15, 37, 51, 67 ; c. 13, § 2; c. 25, § 68. *Boston* v. *Turner*, 201 Mass. 190, 196. Their duty to assess and collect taxes upon all the real estate which passed to the defendant by Mr. Parkman's will, if that property is liable to taxation, is absolute, and does not at all depend, as to any particular parcel, upon whether it has or has not been conveyed by the city. But there are serious practical difficulties in such assessment and collection. Some of them already have been mentioned. The rate of taxation for city purposes is limited by statute to the amount which the Legislature· has regarded as sufficient. R. L. c. 12, § 54 ; c. 27, § 26. The value of the real estate received under this devise was nearly a million of dollars. If this is taxable, as the tax must be paid by the city itself, its net income will so far be

diminished beyond the amount contemplated by the Legislature, or either the corpus or the income of the trust fund will so far be reduced. If the city owns other land, which is unimproved and yields no income, this will become a liability instead of an asset. But we know that this has been the case in the past, not only in Boston but in other municipalities. See *Keening* v. *Ayling*, 126 Mass. 404; *Dingley* v. *Boston*, 100 Mass. 544; *Page* v. *O'Toole*, 144 Mass. 303; *Commonwealth* v. *Roxbury*, 9 Gray, 451; *Cleaveland* v. *Norton*, 6 Cush. 380, 384; *Brigham* v. *Shattuck*, 10 Pick. 306, where there was a devise somewhat like the one before us; *Hayden* v. *Stoughton*, 5 Pick. 528, where land devised to a town for a public use was accepted and held by the town, but the condition was not complied with. *Rawson* v. *Uxbridge School District*, 7 Allen, 125, resembles *Hayden* v. *Stoughton*, the town having ceased to hold the land for the public purpose to which it had been appropriated and having afterwards sold it to the tenant to be used for a wholly different public purpose. It is believed that at least a large portion of that thickly settled part of the city of Boston now called the South End was, while vacant and unimproved, the private property of that city, as appeared in *Keening* v. *Ayling*, *ubi supra*. It does not appear that in any of these cases, or in any of the other cases of similar ownership, which probably have been numerous, any question was raised as to the payment of taxes upon the property while so owned; a circumstance which would tend to show the general opinion that under such circumstances there was no liability to taxation.

But we do not deem it necessary to pass upon this broad question. This estate was held by the city in trust for a specific public purpose. In this respect it resembles somewhat the sinking funds which in some cases cities are required by R. L. c. 27, §§ 12 *et seq.*, to provide and maintain for the extinguishment of their indebtedness. Under § 15 these funds may be, and doubtless sometimes are, invested in mortgages upon real estate. It sometimes must be necessary to foreclose such mortgages and to take title to the land therein described. If the income of the fund is to be diminished and its accumulation checked and delayed by the payment of taxes upon the land while so held as an investment, the purpose of the statute to which we have referred,

to provide ˙sufficient means for the payment of the debt at its maturity, is so far frustrated. Accordingly real estate so held has been decided to be exempt from taxation. *Commonwealth* v. *Lebanon Water Works*, 130 Ky. 61. And yet the land in such a case is not directly appropriated and used for a public purpose. Like that involved in the case at bar, it is held merely as an investment, part of a fund whose income is to be applied to a specific purpose, such as properly comes within the definition of a public charity. The income of this fund is directly applicable to such a public use; neither directly nor indirectly can the city of Boston divert it therefrom. The income must forever be applied to this specific purpose. It can in no way and by no artifice be applied to the general purposes of the city. The case in this respect differs materially from *Essex County* v. *Salem*, 153 Mass. 141, and the other cases heretofore cited, in which the actual use of the property was made the test of its liability to taxation.

Real estate held by educational, charitable or religious institutions is not exempted from taxation unless used and appropriated for their distinctive purposes. R. L. c. 12, § 5, cl. 3 and 7. *Amherst College* v. *Amherst*, 193 Mass. 168. *Evangelical Baptist Society* v. *Boston*, 204 Mass. 28. But this is by the express words of the statutes. In such cases the income of the property which was held not to be exempt went into the general funds of its owners, and a case like that now before us was not presented. And any inference that might be drawn against our conclusion from the language of this statutory exemption is largely met by the fact that upon the reasoning in *Davis* v. *Treasurer & Receiver General*, *ante*, 343, Mr. Parkman's devise would be exempt from the succession tax imposed by St. 1909, c. 490, Part IV., and c. 527. This circumstance is of course not decisive; but it is to be considered in determining what is a just and consistent mode of taxation under our statutes and decisions..

The specific provision in St. 1909, c. 490, Part II. § 67, for taxation by a city or town of land taken or purchased by it for non-payment of prior taxes, unless wholly superfluous, tends to indicate the legislative opinion that such land would not otherwise be taxable.

It is said however that in fixing the basis of State and county

taxation an injustice will be done by taxing disproportionately other cities and towns if property like this is not to be assessed. We do not know what property is held by other municipalities that would be exempt under our view. It may be that some slight inequality would result, but looking at the total assessed valuation of the Commonwealth, we cannot regard this as more than a negligible quantity. See *Natick & Cochituate Street Railway* v. *Wellesley*, 207 Mass. 514, 523, 524.

We are of opinion that this estate, owned by the defendant not for its own benefit but strictly in trust to apply the income to a particular specified charitable use, is not legally liable to assessment and taxation. The judgment for the plaintiff must be affirmed.

*So ordered.*