GIBSON *et al. v.* FRYE INSTITUTE *et al.*

(*Knoxville.*   September Term, 1916.)

**1. CHARITIES.   Character of gift.**

Though testator's primary intention in making a gift of a build-
ing for the use of working people of a city may have been to
amuse or entertain the people, or even to memorialize his own
name, if, as a matter of fact, the institute, as contemplated by
him, will advance charitable purposes, the bequest will be none
the less charitable, since the real nature and effect of a gift
determines its character rather than the motive of the donor.
(*Post, pp.* 453-455.)

Cases cited and approved: Jones v. Habersham, 107 U. S., 174;
In re Graves' Estate, 242 Ill., 23; Franklin v. Hastings, 253
Ill., 46; Wilcox v. Attorney-General, 207 Mass., 198; Richardson
v. Ethics Institute, 208 Mass., 311; Burbank v. Burbank, 152
Mass., 254; Burr v. Boston, 208 Mass., 537; Stairnes v. Burton,
17 Utah, 331; Chamberlain v. Stearnes, 111 Mass., 267; Mason v.
Perry, 22 R. I., 475; Coit v. Comstock, 51 Conn., 352; Rotch v.
Emerson, 105 Mass., 433; Goodell v. Union Association, 29 N.
J. Eq., 32; Green v. Allen, 24 Tenn., 170; Johnson v. Johnson,
92 Tenn., 559.

Constitution cited and construed: Art. 1, sec. 22.

**2. CHARITIES.   Educational   institution.   Auxiliary   amuse-
ments.**

Where testator made a gift in trust to a corporation to erect a
building wherein dancing and other amusements might be
carried on for the working people of the city in connection with
a library and lectures, the dancing and amusements were
merely accessory and auxiliary to the purpose of the trust,
which was educational and charitable, and would not vitiate
such trust. (*Post, pp.* 455-457.)

Cases cited and approved: Goodell v. Union Association, 29 N. J. Eq., 32; Commonwealth v. Y. M. C. A., 116 Ky., 711; Pa. v. Y. W. C. A., 125 Pa.; 572; Little v. City of Newburyport, 210 Mass., 414.

3. CHARITIES.  Validity of gift.  Public policy.

A bequest in trust for the erection of a building containing a library, free lecture rooms, dancing halls, and other rooms for amusements for the working people of the city, was not void as against public policy, on the ground that a dancing hall would tend to promote immorality. (*Post, pp.* 457, 458.)

4. CHARITIES.  Validity of gift.  Public policy.

A bequest to a corporation to be formed to erect a building containing a library, lecture rooms, a dance hall, and other amusements for the working people of the city, was not void as against public policy, on the ground that the dancing would be participated in by both races, and the institution would degenerate into a negro dancing hall. (*Post, p.* 458.)

5. CHARITIES.  "Education."

"Education," as used in relation to the law of charitable trusts, includes not only the training and development of the mind, but the training and development of the body. (*Post, p.* —.)

Cases cited and approved: Almy v. Jones, 17 R. I., 265; Detwiller v. Hartman, 37 N. J. Eq., 347.

6. CHARITIES.  Questioning authority of corporation created to administer.  Right of heirs.

Testator's collateral heirs and distributees after his widow's death could not question the authority of the corporation chartered by testator's trustees to administer a charitable trust created by him, which question could only be raised in a suit by the attorney-general. (*Post, pp.* 458-460.)

Cases cited and approved: Heiskell v. Chickasaw Lodge, 87 Tenn., 668.

7. CHARITIES.  Charitable Trust.  Indefiniteness.

Testator's bequest to trustees to organize a corporation to erect a building containing a library, lecture rooms, dance hall, and amusement rooms for the use of the working people of the city, was not indefinite. (*Post, p.* 460.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—FOSTER V. BROWN, Special Chancellor.

LITTLETON, LITTLETON & LITTLETON, ALLISON, LYNCH & PHILLIPS and G. L. HESSE, for appellants.

SIZER, CHAMBLISS & CHAMBLISS, CANTRELL & MOON and MARTIN & TRIMBLE, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

William R. Frye died in Hamilton county, November 20, 1910, leaving a large estate, which he disposed of by will. He made several small bequests, and the balance of his property was left to three trustees, namely, John H. Cantrell, Francis Martin, and his widow, Mrs. Mary G. Frye. The trust estate was charged with an annuity of one thousand and eight hundred dollars per annum in favor of Mrs. Frye.

The object of the trust was "to erect in Chattanooga, Tennessee, a building provided with rooms for a library, dancing hall, lecture halls, and other rooms suitable for good moral amusements." The will further provided that said building, when completed, was "to be for the free use of the working men and women of Chattanooga, Tennessee, and their families."

Generally speaking, the will directed that the trust estate be managed and conserved by the persons named until the death of Mrs. Frye. Upon her death the surviving trustee or trustees were instructed to join with themselves a sufficient number of persons and take out a charter for a corporation under such name as they should think proper, for the general welfare of society, and that the trust estate should be turned over to said corporation for building and maintaining the institution described.

Other language of the will pertinent to the controversy before us is in these words:

"Upon the conveyance of said property to said corporation it is my desire that said corporation shall use all of the personal property, moneys, notes, bonds and choses in action, and the proceeds which may be derived from them or such part thereof, as it may deem necessary, in the purchase of a suitable lot in the city of Chattanooga, and the erection thereon of a building provided with rooms for a library, lecture halls, dancing halls, and such other rooms and appliances as may be necessary for the maintenance of good moral amusements of any kind or character; and said building when completed shall be for the free use of the citizens of Chattanooga, Tennessee, and their families. No intoxicating liquors of any kind shall ever be dispensed in this building, or on the lot on which it stands, and no gambling or game of chance for gain of any kind or character shall ever be permitted to be carried on in the building or on the lot on which it stands. No

preacher, or any religious denomination whatever, shall ever be permitted to deliver a doctrinal sermon in this building, or to preach on matters of creed to persons gathered therein, but any person may be permitted to deliver literary, scientific, or moral lectures on such conditions as the authorities having control of the building may think proper; and the giving of the lectures shall be encouraged and aided by said corporation and its authorities.

"It is my will that said corporation shall forever maintain a building thus erected, in trust for the use of the citizens of Chattanooga, Tennessee, and their families, for the purposes herein specified; but upon such reasonable regulations, as may to the directors of said corporation seem proper, for the purpose of carrying out the objects and purposes in this will expressed.

"It is my will and desire that all of the additional property conveyed to said corporation, over and above that directed to be used in the purchase of a lot and the erection of a building hereinbefore described, shall constitute an endowment fund to enable the said corporation to perpetually maintain said building as a place for the social, intellectual and moral enjoyment of the citizens of Chattanooga, Tennessee, and their families."

The aforesaid will was duly probated, and this suit was instituted by the collateral heirs and distributees of the testator, after the widow's death, assailing the validity of the provisions of the will to which reference has just been made.

The chancellor sustained the will, and complainants have appealed to this court.

The bill avers that the trustees have taken out a charter and organized a corporation known as "Frye Institute," and the following objections are urged to the validity of the portion of the will quoted:

(1) It violates section 22 of article 1 of the Constitution of Tennessee, which provides "that perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed."

(2) The beneficiaries provided for in said clauses above set out are too indefinite for ascertainment.

(3) The objects and purposes of said trust are too indefinite for ascertainment.

(4) The provision requiring the organization of a corporation to carry out said objects and purposes cannot be complied with because the laws of Tennessee do not provide for a corporation capable of executing the trust or carrying out the purposes provided for in the will.

(5) The objects and purposes provided for are against public policy in that the will contemplates the maintenance of public dancing halls and entertainment for all working people of Chattanooga, and all the citizens of Chattanooga, without regard to race, color, or moral character of the beneficiaries or participants in said amusements.

The fifth objection to the will has been most strongly urged upon the court in argument and brief of counsel.

This objection will accordingly be first considered. In this connection it is contended for complainants that the trust is invalid because it was intended to further purposes not charitable as well as purposes charitable.

We may first observe that the real nature and effect of a gift determine its character rather than the motive of the donor. Although the testator's primary intention may have been to amuse or entertain the people of Chattanooga, or even to memorialize his own name, if, as a matter of fact, the institution contemplated by him will advance charitable purposes, the bequest will be none the less charitable. 5 R. C. L. pp. 298-325; *Jones* v. *Habersham,* 107 U. S., 174, 2 Sup. Ct., 336, 27 L. Ed., 401; *In re Graves' Estate,* 242 Ill., 23, 89 N. E., 672, 24 L. R. A. (N. S.), 283, 134 Am. St. Rep., 302, 17 Ann. Cas., 137; *Franklin* v. *Hastings,* 253 Ill., 46, 97 N. E., 265, Ann. Cas., 1913A, 135; *Wilcox* v. *Attorney General,* 207 Mass., 198, 93 N. E., 599, Ann. Cas., 1912A, 833; *Richardson* v. *Ethics Institute,* 208 Mass., 311, 94 N. E., 262, 21 Ann. Cas., 1158, and note.

It is conceded by counsel for the complainants that section 22, article 1, of the Constitution of Tennessee, relating to perpetuities and monopolies, does not apply to charitable trusts. It is furthermore conceded by counsel that the erection and maintenance of an institution equipped with a library and with lecture halls might serve charitable purposes. Such an institution would be educational.

Counsel in effect concedes, although not in express words, that a bequest for governmental purposes which

tends to reduce taxation and lessen the burdens of government is charitable. 5 R. C. L., 338; 6 Cyc., 922; *In re Graves' Estate,* 242 Ill., 23, 89 N. E., 672, 24 L. R. A. (N. S.), 283, 134 Am. St. Rep., 302, 17 Ann. Cas., 137; *Burbank* v. *Burbank,* 152 Mass., 254, 25 N. E., 427, 9 L. R. A., 748; *Burr* v. *Boston,* 208 Mass., 537, 95 N. E., 208, 34 L. R. A. (N. S.), 143; *Stairnes* v. *Burton,* 17 Utah, 331, 53 Pac., 1015, 70 Am. St. Rep., 788. Under the authorities just quoted, bequests for the erection and maintenance of public buildings, pesthouses, and public parks have been held to be charitable. They were all for governmental purposes.

It is insisted, however, that a bequest for charity, in order to be sustained, must be for purposes purely charitable, and that if an indefinite portion of such bequest is to be applied to purposes not charitable, then the entire provision fails. Such indeed seems to be the weight of authority. *Chamberlain* v. *Stearns,* 111 Mass., 267; *Mason* v. *Perry,* 22 R. I., 475, 48 Atl., 671; *Coit* v. *Comstock,* 51 Conn., 352, 50 Am. Rep., 29; *Rotch* v. *Emerson,* 105 Mass., 433; *Goodell* v. *Union Association,* 29 N. J. Eq., 32, and cases in note 14 L. R. A. (N. S.), 87. This principle is recognized in *Green* v. *Allen,* 5 Humph., 170, and *Johnson* v. *Johnson,* 92 Tenn., 559, 23 S. W., 114, 22 L. R. A., 179, 36 Am. St. Rep., 104.

The argument is that the income from this trust is to be applied indiscriminately for purposes of entertainment and amusement as well as for educational purposes, and it is urged that such a bequest cannot be sustained.

The authorities upon which this argument is found-
ed, some of which are referred to above, are distin-
guishable from the cause before us. An examination
of these cases leads us to believe that the noncharitable
purposes therein considered had no reasonable rela-
tion toward the effectuation of the charitable purposes.
They did not tend to promote the charities designed
by the donor.

If the dancing halls and other rooms for moral
amusements contemplated by Mr. Frye were not con-
nected with the library and lecture halls, we would
doubtless follow the authorities relied on by complain-
ants, and hold that the trust attempted was invalid.
The dancing and other amusements, however, were in-
tended by the testator to be carried on in the same
building and under the same roof with the library and
lectures. These means of amusement are calculated to
draw people into the institution, and to make it pop-
ular with those whom the testator intended to benefit.
The general effect of the institution to be founded will
be educational by reason of the library to be therein
contained and by reason of the lectures there to be
delivered. If the dancing and amusements mentioned
are calculated to bring the people of Chattanooga with-
in the influence of the educational features of the in-
stitution, then we think such dancing and amusements
are merely accessory and auxiliary to the main pur-
pose of the trust, and should not be held to vitiate such
trust.

Our churches have found it necessary to resort to various schemes of entertainment to attract people to houses of worship and to bring them within the good influences of the sanctuary. In the largest cities at this time dancing halls are maintained in connection with some of the church houses. They are thought to serve a useful purpose by these congregations.

Bequests for Young Men's Christian Associations are sustained as charitable. *Goodell* v. *Union Association,* 29 N. J. Eq., 32; *Commonwealth* v. *Y. M. C. A.,* 116 Ky., 711, 76 S. W., 522, 105 Am. St. Rep., 234; *Pa.* v. *Y. W. C. A.,* 125 Pa., 572, 17 Atl., 475; *Little* v. *City of Newburyport,* 210 Mass., 414, 96 N. E., 1032, Ann. Cas., 1912D, 425. These establishments uniformly maintain gymnasiums, swimming pools, and other means of diversion and recreation. It could not be said that an institution of this character was misapplying its funds in keeping up such gymnasiums, swimming pools, and the like.

Suppose the case of an endowed church whose trustees carried on a dancing room in connection therewith to make the church popular and to attract young people within its walls. While the propriety of such an appendage from an ecclesiactical standpoint might be debatable, viewing it from the bench the court would scarcely convict such trustees so expending their income of misapplication of the trust fund.

Much less would the court be inclined to question such an expenditure by the trustees of a secular enterprise like the Frye Institute.

The contention of complainants then amounts to this: That we should strike down this charity because testator conferred express authority on the trustees to include certain features in the institution contemplated, the inclusion of which we would doubtless have approved had there been nothing in the will on the subject.

The dancing and amusements contemplated by Mr. Frye are calculated to draw people to the institute which he desired to found. These things tend to the promotion of the dominant purpose of the trust. They are not separate and distinct matters; they are closely correlated to the main thought of the testator, and we do not think they destroy the charity.

It is insisted, however, by the complainants that such a dancing hall will tend to promote immorality, and that for this reason the bequest is void as against public policy. We are referred by counsel to the public dancing halls operated for profit in the cities of the country, and our attention is called to reports of social workers showing that these places are great instrumentalities of evil.

While the dancing hall to be conducted in the Frye Institute is for the benefit of the public, so is the library, and so is the lecture hall. The whole institution will be under the control of trustees. These trustees will no more allow immoral characters or immoral exhibitions in the dancing hall than they will allow immoral books to be placed on the shelves of the library or immoral lectures to be delivered in the auditoriums.

Such a course on the part of the trustees is unthinkable. If any such license were permitted, the trustees would be promptly brought to account by the attorney-general and removed by the court.

The argument that the dancing in the institution will be participated in by both races, and that the institute will degenerate into a negro dancing hall, is likewise without merit. The same argument might be made against any public charity. Our people have heretofore found means of controlling such situations, and it is likely they will continue to so do. No one is entitled to demand as of right the benefits of a charitable institution. Only the attorney-general can question the conduct of such an institution by the trustees. We have lately been over this subject in *Ewell* v. *Sneed,* and it is not necessary to again discuss the authorities. The trustees of the Frye Institute will, no doubt, take proper precautions to prevent an objectionable commingling of the races, and such action on their part can only be brought in question by the attorney-general's suit.

While we decide the case on the grounds stated above, it may not be amiss to observe that education is a broad term. It includes not only the training and development of the mind, but the training and development of the body. One is hardly more important than the other.

It cannot be doubted that a proper form of dancing is good physical exercise, and tends to promote health and vigor. Certainly dancing promotes physical grace

more than any other form of exercise.  Bequests for an art institution have been upheld as charitable. *Almy* v. *Jones,* 17 R. I., 265, 21 Atl., 616, 12 L. R. A., 414. Likewise it has been intimated that a bequest for concerts to cultivate a taste for good music would be charitable. *Detwiller* v. *Hartman,* 37 N. J. Eq., 347.  Music and art develop merely the esthetic tendencies of the mind.  Is it not equally permissible to sustain as charitable an institution which has a tendency to develop bodily grace and poise?

We have assumed in the foregoing that the purposes of this trust were educational.  Inasmuch as education is a function of government, it is impossible at times to say when a charity is educational, and when governmental.  These things shade into each other.

Many civic students think the time is near when the amusement and entertainment of the people in the crowded centers of population must be undertaken by the municipal governments.  The courts now declare public parks and places for open air recreation to be proper agencies of city government.  The operation of other places for the harmless entertainment of the people, which will keep them away from vicious places of amusement, might serve a useful governmental purpose.  In this aspect, such an institution as that contemplated by Mr. Frye should be sustained as a governmental charity, were it not educational.  It will tend to relieve the city of Chattanooga of a burden which the city, a large manufacturing center, may one day have to assume.

As stated above, we have lately discussed at length the subject of charitable bequests in *Ewell* v. *Sneed,* and reviewed the principles controlling the same in this State. It is unnecessary to go over this ground again.

Our cases are to the effect that unless in favor of a person capable of taking, a charitable bequest must be supported by trustees and definite in its object.

The bequest of Mr. Frye was to trustees named. The provision that these trustees should organize a corporation and turn the property over to it amounted to no more than the usual provision which gives to trustees the right to nominate their own successors.

Complainants are not entitled to question the authority of the corporation chartered as Frye Institute to administer this trust. Such question can only be raised in a suit by the attorney-general. *Heiskell* v. *Chickasaw Lodge,* 87 Tenn., 668, 11 S. W., 825, 4 L. R. A., 699.

We do not think this trust is indefinite. Institutions similar to the one contemplated by Mr. Frye, except as to the dance hall feature, are in operation in Nashville and in Memphis. We refer to the Watkins Institute of the former city and the Goodwyn Institute of the latter. These two institutions were created by wills scarcely as definite in their provisions as is the will of Mr. Frye, and yet no practical difficulty has been found in administering either trust.

Having concluded that the provisions of Mr. Frye's will herein discussed established a valid charity, the objection as to perpetuities and monopolies is, of course, without force.

It results that all the assignments of error are overruled, and the decree of the chancellor is affirmed.