MUNSEY et al. v. RUSSELL BROTHERS et al.

STATE ex rel. v. RUSSELL BROTHERS et al.

213 S. W. (2d) 286.

Eastern Section.   March 9, 1948.

Petition for Certiorari denied by Supreme Court, July 17, 1948.

G. Howard Nevils, of Tazewell, for appellants.

John P. Davis and A. G. Shumate, both of Tazewell, for appellees.

McAMIS, J. These two consolidated suits involve the validity of an attempt by Claiborne County through the action of its County Court and Board of Education to transfer title to 4 acres of land acquired by the Board of Education by deed on August 23, 1933 and since used as a school playground.

Cause Number 1490 was instituted by citizens and tax-payers of Claiborne County and patrons of Claiborne County High School against Lawrence M. Russell, Claude Russell, C. L. Moyers, Superintendent of Schools, and the Chairman and members of the Board of Education of Claiborne County. The bill in that case charges that Lawrence M. Russell was a member of the Board of Education and acquired title to the property by virtue of

action taken by that body contrary to the provisions of Code Section 1874.[1]

The bill in cause Number 1494 was filed by the State, on relation of citizens and taxpayers, to have declared void a deed executed by the County Judge to Lawrence M. and Claude Russell pursuant to authority conferred by the County Court in Special Session. It is now conceded by counsel for the Board and the County Attorney that the latter deed was ultra vires and void and it will not be necessary to further notice it.

The tract of land in question was acquired by the Board of Education with funds bequeathed to the Board under the will of James B. Lewis to be held in trust and used for the benefit of the Claiborne County High School, as distinquished from the general school system of the County. The will was so construed in Breeding v. Williams, 9 Tenn. App. 335.

The Chancellor followed this holding in the present case and further held that the members of the Board of Education took the fund as trustees and held it in that capacity rather than in their official capacities as members of the Board. The Chancellor also found that the fund derived from the Lewis estate did not lose its trust identity by being mingled with other educational funds of the County and that title to the land purchased with the fund was likewise held by members of the Board in their capacities as trustees and not in their official capacities. Neither party has challenged these findings

---

[1]Section 1874 provides: "It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal corporation, county, or the state, shall or may be interested, to be directly or indirectly interested in any such contract."

and conclusions of the Chancellor and we accept them as the law of the case.

But the Chancellor went further and found that the trustees, in order to meet the requirements of the State Department of Education, had a right to exchange the four acre tract for a larger tract as they attempted to do in making the conveyance here under attack.

The Chancellor seems to have been of the opinion also that, under Code Sections 9339, 9340, a suit challenging the handling and application of trust property could not be maintained without the approval of the District Attorney-General though it is not clear that this conclusion influenced his action in dismissing the bills.

Since neither party questions, or it would seem could question under Breeding v. Williams, supra, the Chancellor's holding that the members of the Board of Education held the title to the land as trustees for the special benefit of the Claiborne County High School, the questions for our determination narrow to only three: (1) Did the trustees exceed their authority in attempting to dispose of the property, (2) If so could the Court, upon its own motion, raise the question of the non-concurrence of the Attorney General and (3) If the question could be so raised should the suit be dismissed on that ground.

(1) We think the deed is voidable on the grounds:

(a) Neither the Lewis will nor the deed under which the trustees acquired title conferred the power to convey or transfer the property. Since the property was acquired for the special benefit of the Claiborne County High School it cannot be implied that any general power of disposition of school property which the Board possesses would control the future handling of the property. If there can be such an implication then we think there would be a further implication that the right to sell the

property would be protected by the provisions of Code Section 1874 making it unlawful for a Board member to be personally interested. However, as the Chancellor said, the testator might have named other persons or a corporation as trustee to handle the trust property. The circumstance that he conferred this power upon the members of the Board does not, in our view, endow the Board with a power of disposition greater than any other trustee would possess. If we are correct in this we think it is clear that the attempted transfer exceded the power of the trustees.

■ "The terms of a trust instrument or declaration may, either expressly or impliedly, invest the trustee with power to sell the trust property, or he may be given such power by statute or by a court having jurisdiction in the premises, or by consent of the beneficiaries. In the absence, however, of any such authorization a trustee has no power or duty to sell trust property, and an unauthorized sale by him is void, or at least voidable. * * *" 54 Am. Jur., 344, Trusts, Section 433. See also Cowan v. Hamilton Nat. Bank, 177 Tenn. 94, 146 S. W. (2d) 359, and cases there cited.

■ The implication of a power to sell does not exist merely from the desirability of making a sale. Annotation 134 A. L. R. 383. Any delay incident to applying to a court of equity even under urgent circumstances does not seem to warrant such unauthorized action, especially where the trustee has a personal interest in the transaction. Cowan v. Hamilton Nat. Bank, supra. In this case the Board insists the larger tract was about to be sold in lots and the delay of going to court for authority to sell the 4 acres might have resulted in losing property badly needed for school puposes. The record is not entirely clear whether the Board had funds it could have

used for this purpose but, with the right of the County to condemn property for school purposes, the need for such hasty action would seem less urgent and no attempt seems to have been made to sell the land to anyone else, though there is proof in the record that three other persons are willing to give nearly twice as much for the tract as Mr. Russell paid.

(b)  We think the attempted sale by the trustees is void or at least voidable for another reason.

Regardless of the form of the conveyance, whether to Lawrence M. Russell, or to Giles, the owner of the larger tract acquired by the Board, and then by Giles to Russell, the proof is clearly to the effect that when the Board acted on the proposal to sell the 4 acres and acquire the larger tract, the voting members knew that Lawrence M. Russell was interested in acquiring the 4 acre tract and would acquire it upon completion of the transaction. Mr. Russell frankly admits that he became interested in the 4 acre tract for the purpose of expanding his tobacco warehouse business on the adjoining lot and, doubtless for this reason, he refrained from voting though he says he "sat in on" some of the discussions. In addition, it appears he was instrumental in taking an option on the larger tract and otherwise collaborated with the Board.

██ It is a broad and stern rule of fiduciary relationships that, irrespective of good faith or motives, the purchase by a trustee of trust property without a decree of court or other competent authority is incompatible with that undivided loyalty toward his trust which the law exacts. He must avoid all transactions that tend to create in himself interests conflicting with those of the beneficiaries of the trust or which tend to call good faith into question.  See Cowan v. Hamilton Nat. Bank, supra.

The rule applies to a purchase of trust property by one cotrustee from another. Jose v. Lyman, 316 Mass. 271, 55 N. E. (2d) 433, 154 A. L. R. 190, Annotation 1 A. L. R. 751.

■ While we think for the reasons stated Code Section 1874 does not apply, as the Chancellor held, the rule of trust loyalty does apply with equal rigor and for reasons similar to those which prompted the prohibitions of the statute.

■ (2) We think the court did not err in raising, upon its own motion, the question of complainants' right to maintain these suits without the approval of the Attorney General. The statute, Code Sections 9339, 9340, makes it the duty of the District Attorney General to bring suit to call to account trustees of funds given for public or charitable puposes or to set aside improper alienations of such property (Code Section 9337). The trust here involved is admittedly of the character described and numerous cases hold that only the District Attorney General may bring such suit even though, as in this case, it is upon relation of individuals, who are liable for the costs of suit. Heiskell v. Chickasaw Lodge, 87 Tenn. 668, 11 S. W. 825, 4 L. R. A. 699; State ex rel v. Vest, 136 Tenn. 167, 188 S. W. 1143; Ewell v. Sneed, 136 Tenn. 602, 191 S. W. 131, 5 A. L. R. 303; Gibson v. Frye Institute, 137 Tenn. 452, 193 S. W. 1059, L. R. A. 1917D, 1062.

The question raised by the Chancellor was, in a sense, a jurisdictional question and one which might call into question the validity of any decree rendered in the case. Others interested in the fund and entitled to share its benefits might invoke the action of the Attorney General in another proceeding. In that event all the work of the court in the present suit would prove fruitless and a waste of the court's time. So, we think it was the right of the

Chancellor to refuse to be bound by any waiver of the right to raise the question imputable to defendants because of their failure to defend upon that ground. See Hickman v. Cooke, 22 Tenn. 640, 643.

(3) However, because the suit involves a matter of public interest and welfare and, as we have held, there is merit in the suit at least to the extent that the transfer is voidable we think the case should be remanded to enable complainants to invoke the aid of the Attorney General. This is in accord with the practice of remanding where there is a meritorious cause of action to remedy a defect as to parties, Stewart v. Glenn, 50 Tenn. 581; Thurman v. Jenkins, 61 Tenn. 426, and we think this action is the more appropriate in view of the fact that the question was never raised by the defendants and not by the Court until the final decree was passed. And, as we have indicated, it is not entirely clear that this question was one of the grounds of decision resulting in the dismissal of the suits. It would also appear that it would be to the interest of the present owners of the property to have this question finally determined by decree binding on the proper parties. It may be that the Attorney General will refuse to intervene after investigating all angles of the case. In that event the deed will stand as a valid conveyance. If he does intervene and attack the deed, a decree will be entered consistent with this opinion. We leave to the sound judgment of the able Chancellor the fixing of a time limit within which the Attorney General may enter his appearance and the question of whether additional proof wll be heard.

Costs of appeal will be equally divided and costs of the Chancery Court, accrued and to accrue, will abide the final result.

Howard and Goodman, JJ., concur.